**Elizabeth HENRETIG and Max D. Henretig, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 78–1642–Civ–WMH.**

United States District Court, S. D. Florida, Miami Division.

May 29, 1980.

David H. Singer, Spiegel & Singer, Miami, Fla., for plaintiffs.

Ana T. Barnett, Asst. U. S. Atty., Atlee W. Wampler, III, U. S. Atty., S.D.Fla., Miami, Fla., for defendant.

## MEMORANDUM OPINION

HOEVELER, District Judge.

This is an action by ELIZABETH HENRETIG and her husband, MAX HENRETIG, under the Federal Tort Claims Act, 28 U.S.C. § 2671, for personal injuries sustained by ELIZABETH HENRETIG in Yellowstone National Park. Jurisdiction is based on 28 U.S.C. § 1346.

On August 21, 1977, plaintiffs were vacationing in Yellowstone National Park. While walking on a footpath in the Echinus Geyser area of the Park, Mrs. Henretig slipped and fell on the trail at approximately 2:45 p. m. As a result of the fall, she sustained a fracture of the left ankle, necessitating surgical treatment.

Plaintiffs have contended that the defendant was negligent in failing to properly maintain the footpath by: (1) maintaining the path at an unreasonably steep incline; (2) allowing the path to become covered with loose gravel; (3) failing to provide hand rails and boardwalks over this area of the trail; (4) failing to post signs warning of the dangers of the path.

Defendant denied the allegations of negligence and asserted as defenses plaintiff's own comparative negligence and the discretionary function exemption of 28 U.S.C. § 2680(a).

## I. THE FACTS

On August 10, 1977, Mr. and Mrs. Henretig left Miami on a vacation trip to the western United States. They first visited Grand Teton National Park and then arrived at Yellowstone National Park on August 19th. They paid an admission fee to enter the park the following day, visiting Old Faithful and other attractions in the southern area of the Park.

On the 21st of August, they decided to visit the Norris Geyser Basin. After parking their automobile in a parking lot, plaintiffs walked down a paved pathway to a cabin which houses a visitors' information center or museum. At the museum, a park ranger informed them that Echinus Geyser would soon be erupting and directed them to a pathway leading to Echinus. This pathway was, in part, a boardwalk consisting of wooden planks and steps down to the geyser area, the remainder being a natural or essentially unimproved dirt surface.

On reaching Echinus Geyser, plaintiffs joined a crowd of people watching the eruption and listening to a description of the geyser activity being given by one of the rangers. At the conclusion of the ranger's talk, Mrs. Henretig asked him if there were other areas of interest nearby and was directed to a trail leading up a hillside and around behind Echinus, along which they could see other geysers.

Mrs. Henretig described this trail as having a "rather steep" incline and consisting of hard-packed dirt with a "dusty" appearance. She had walked about thirty feet up the trail when suddenly her left foot slipped on what appeared to be loose gravel or pebbles. Her ankle twisted beneath her, she lost her balance and hit the ground, sliding about six feet down the slope before coming to rest.

Her husband and others on the trail ran to her upon hearing her screams. She further testified that one of the other tourists also slipped, but did not fall, as he was coming to her aid. Ranger Lawrence Hill arrived on the scene, a temporary splint was placed on her ankle, and Mrs. Henretig was carried on a stretcher back to the parking lot, where a van took her to the Park Hospital. She was treated and hospitalized overnight and then referred to an orthope-

dic surgeon in Jackson, Wyoming. The next day, August 22nd, Mr. Henretig took her to the hospital in Jackson, where she underwent surgery for the implantation in her ankle of a plate and screws. Mrs. Henretig remained in the Jackson hospital for some ten days and was released on crutches.

### A. Steepness of the Trail

Mrs. Henretig testified that the steepness of the path was a contributing cause of her fall. Numerous photographs and sketches of the Echinus area and its trails were introduced into evidence, many by stipulation of the parties. In addition, plaintiffs' expert, Manhar Jadav, a consulting engineer, testified to the slope or incline of various areas of the trail. From a contour map supplied him by the Government, he had calculated the elevation of different segments of the trail, by taking a ratio of the number of feet of vertical rise per the number of feet of horizontal pathway covered. This ratio was also expressed as a per cent of incline, as well as in degrees of the angle formed. His initial calculations of the angles, however, were erroneous because he had measured them from a graphic representation which showed the vertical factor on a scale ten times as great as the horizontal scale. The slope originally calculated by Mr. Jadav for this stretch of trail was an angle of 62 degrees. He returned to correct his testimony to state that the correct angle is approximately 11 degrees. Each of his angular measurements was similarly inaccurate since each was measured from the distorted graph.

Mr. Jadav further testified that, in his opinion, the section of the trail upon which Mrs. Henretig fell was too steep and caused her to fall. This opinion was based upon standards for landscape architects, which specify a 10 per cent slope and never more than a 12 per cent slope, and Department of Housing and Urban Development standards, which specify a maximum slope of 8.33 per cent. The expert's testimony, as corrected by him, is rejected by the Court because these standards obviously pertain to constructed or man-made slopes, while the trail in question is in its natural condition without any improvement. Additionally, the actual gradation and slope of the trail is readily visible from the photographs of the area. The Court concludes, as a factual finding that the slope in question was not dangerous for the plaintiff and that the angle of slope was not a proximate cause of the plaintiff's fall.

### B. Loose gravel on the path

The trail upon which Mrs. Henretig fell is a dirt path up a slight hillside behind Echinus Geyser and around it. It is a natural and essentially unimproved pathway, which contains as part of the natural soil small rocks or pebbles scattered throughout. On these types of trails, the park rangers do very little maintenance work. They smooth out any ruts that may develop and remove any large rocks, trees, or other vegetation that may obstruct the pathway. Barrett Welker, one of the rangers in charge of trail maintenance, testified that there was not much that could be done by maintenance personnel regarding loose dirt or gravel on the trails, because these trails are *composed* of dirt and gravel. One could not remove the gravel from the trail without removing the whole mountain.

Lawrence Hill, a former park ranger, testified that the rangers walk the trails every day, to remove rocks, branches, and any other obstacles. When asked what he would do if he saw gravel on the path, he also indicated that there was nothing that could be done because that is the nature of the trail. If one removes pebbles on the surface, one will only uncover other pebbles underneath them.

Ranger-Naturalist, Thomas Pittenger described the area of the hillside around Echinus as composed of a volcanic lava rock, which easily breaks down under the extremes of temperature caused by the thermal activity. The soil there is composed of particles of this rock, ranging in size from grains like sand to pebbles to large stones or boulders.

The pebbles upon which Mrs. Henretig lost her footing were apparently particles of

this decomposing volcanic rock. Ranger Hill, who came to her aid after the fall, went back to the area after Mrs. Henretig was taken to the hospital. He saw no trees, roots, branches, or other obstructions that would have caused her to fall. A photograph of the site of the fall taken shortly thereafter (Plaintiff's Exhibit # 11) shows nothing unusual; there are merely some small rocks and twigs among the dirt, but no large accumulations of loose gravel. Indeed, the case incident report prepared by Hill (Defendant's Exhibit # 2) states that Mrs. Henretig told him that her own weight on the twisted ankle caused her to fall and that she did not trip on anything. He testified similarly, that Mrs. Henretig told him she twisted her ankle and fell on it.

### C. Hand rails and Boardwalks

Part of the Echinus trail consists of boardwalk with steps and hand rails. The boardwalked area leads down an incline to the geyser area from the museum and serves several functions. One function is to prevent the washing out of the trail in steep areas where the geysers erupt. Another is to prevent tourists from wandering off the designated path because the crust is very thin over the thermal areas and could give way under the weight of traffic. Asphalt surfaces cannot be used in the areas of thermal activity because the extremes of temperature would cause the surface to crack and develop potholes. The boardwalks are located so as to get the tourists safely as near as possible to the attractions.

The conditions of the area and the terrain which is covered by visitors dictate the type of surface to be used in a particular area of the trail. Asphalt is used primarily in areas of heavy traffic. Boardwalk is used in steep areas and across areas of thermal activity so that the public may negotiate these areas safely. Although none of the rangers who testified were aware of any specific written guidelines or policies of the Park Service governing the type of surfacing required in a given area, they indicated that the park was to be maintained in as natural a condition as possible. The area where Mrs. Henretig fell was one of the natural trails in the back area of the Echinus Geyser trail, without any hand rails or boardwalked surfaces.

### D. Warning Signs

Mrs. Henretig testified, and defendant concedes, that there were no signs posted in the area where she fell warning travelers of a steep incline, loose gravel on the path, or any other of the alleged dangers in the area. The Park Service does, however, post such warning signs throughout the Park, where conditions indicate the need for such signs.

Plaintiffs' Exhibit # 17 is a photograph of a warning sign in another area of the Park, which reads: "Danger. Unsafe Footing! No Travel beyond this point." Plaintiffs' Exhibit # 18 is a photograph of another warning sign in a different area: "Trail Narrow and steep. Use trail at your own risk." As is apparent from the photographs, these signs are on the edges of very steep canyons quite unlike the trail where Mrs. Henretig fell. Ranger Hill testified that there is a potential fall of 1000 feet into a rough canyon where these signs are located. The area of the trail where Mrs. Henretig fell, on the other hand, rises a total of sixteen feet from its lowest to highest point. The trail is broad and flat at that point, and the sides are banked so as to slope gradually down to the Geyser Basin area.

## II. THE LAW

This suit is brought under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). The Tort Claims Act provides that the United States shall be liable for injuries resulting from the negligent acts of its employees in the same manner and to the same extent as a private individual would be liable under like circumstances. 28 U.S.C. § 2674. Unless negligence can be shown on the part of the federal government or its employees, no recovery may be had. *Laird v. Nelms*, 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499, *rehearing denied*, 409 U.S. 902, 93 S.Ct. 95, 34 L.Ed.2d 165 (1972).

■ The applicable law is that of the State of Wyoming. 28 U.S.C. § 1346(b); *Ashley v. U. S.*, 215 F.Supp. 39 (D.Neb. 1963), *affirmed*, 326 F.2d 499 (8th Cir. 1964).

### A. The discretionary function exception (28 U.S.C. § 2680(a))

Section 2680 exempts certain types of claims from the operation of the Tort Claims Act, including:

> Any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

■ If the exceptions apply, the district court lacks jurisdiction of the subject matter and must dismiss the claim. *Morris v. U. S.*, 521 F.2d 872 (9th Cir. 1975). It has been held that the decision to develop or not to develop certain areas within Yellowstone National Park falls within the discretionary function exception. *Smith v. U. S.*, 383 F.Supp. 1076 (D.Wyo.1974), *affirmed, Smith v. U. S.*, 546 F.2d 872 (10th Cir. 1976). There the district court found that the federal employees

> . . . were engaged in the performance of discretionary functions on the part of the National Park Service . . at the time the decisions were made with respect to the development of thermal areas within Yellowstone National Park, and at the time the decisions were made to exclude areas like the one in which the plaintiff was injured from the development programs, and under the law *no liability attaches to those things involved in that discretion including the failure to erect boardwalks, barricades, guardrails, fences, or signs. Dalehite v. U. S.*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *Ashley v. U. S.*, 215 F.Supp. 39 (D.Neb. 1963). [Emphasis supplied].

*Smith v. U. S., supra* at 1081.

On appeal, the Tenth Circuit assumed *arguendo* that the district court was correct in finding that the decision to leave the area "undeveloped" was a discretionary function. The appellate court found, however, that the decision as to the posting of warning signs must be judged separately from the decision to leave the area undeveloped. A policy decision to designate certain areas as "undeveloped" ones may reasonably entail the omission of boardwalks, trails, or footpaths, but the decision to omit warnings of dangerous or hazardous conditions is not within the exception for discretionary functions. *Smith v. U. S., supra* at 877.

■ Thus, insofar as plaintiffs' claim rests on the theory that the government was negligent in failing to develop this area with boardwalks and handrails, such claims must be dismissed. The decision to leave this area of the trail undeveloped is within the discretion of the Park Service and no liability can attach for the exercise of that discretion.

### B. Duty owed to Plaintiffs

■ Under Wyoming law, when the landowner charges for entry upon lands used for recreational purposes, he confers upon the visitor the legal status of an invitee. Wyoming Statutes (1977) 34–19–103, 34–19–105. Since plaintiffs paid an admission fee to enter the Park, they have the status of invitees to whom a duty of care is owed by the landowner.

The duty of the landowner to an invitee is to use ordinary and reasonable care to keep the premises safe and to warn of any hidden danger or defect. Wyo.Stat. (1977) 34–19–102, et seq.; *Smith v. U. S.*, 383 F.Supp. 1076, 1081 (D.Wyo.1974); *Ashley v. U. S.*, 215 F.Supp. 39, 45 (D.Neb.1963), *affirmed*, 326 F.2d 499 (8th Cir. 1964); *Middaugh v. U. S.*, 293 F.Supp. 977, 980 (D.Wyo.1968).

■ The inviting landowner does not, however, become the insurer of the safety of an invitee. *McKee v. Pacific Power & Light Co.*, 417 P.2d 426, 429 (Wyo.1966); *Dudley v. Montgomery Ward & Co.*, 64 Wyo. 357, 192 P.2d 617, 622 (1948); *Ashley v. U. S., supra* at 43; *Bluejacket v. Carney*, 550 P.2d 494, 497 (Wyo.1976).

■ Nor is there any duty to warn an invitee of dangers or defects which are known or obvious. *Smith v. U. S., supra* at 1081; *Bluejacket v. Carney, supra* at 498.

■ Wyoming law also imposes a reciprocal duty upon the invitee to exercise ordinary care to avoid injuring himself. *Dudley v. Montgomery Ward & Co., supra* at 622; *Smith v. U. S.*, 546 F.2d 872, 878 (10th Cir. 1976); Wyo.Stat. (1977) 34–19–106(b).

### C. Alleged acts of negligence by Defendant

Plaintiffs have contended that defendant breached its duty of care in several ways: (1) by maintaining a trail with too steep an incline for safe negotiation; (2) by allowing loose gravel to accumulate on the path; (3) by failing to erect boardwalks and hand rails on this area of the trail; and (4) by failing to post appropriate warning signs.

As to the steepness of the trail, both plaintiffs and their expert, Jadav, testified that they thought the subject area of the trail was quite steep. The Rangers all testified, however, that they did not think this was a particularly steep trail. The actual slope of the trail is visible in the several photographs and charts admitted into evidence, thus the particular terminology used to describe the slope is of only limited assistance.

As the path passes around behind Echinus, it rises a total of sixteen feet from its lowest point to its highest point and then descends again on the other side. The elevation of the trail must have been apparent to Mrs. Henretig before she set out on that pathway. There were other people on the same path, both ahead of and behind the Henretigs that day, only one of which, according to plaintiffs, experienced any difficulty whatsoever in negotiating the pathway. The Rangers testified that there had been no other reported falls on the trail by other visitors that season or in any prior year, although many people visit the area each year.

■ From all of the evidence, the Court concludes that the slope of the trail does not constitute an unsafe condition, and there is, therefore, no basis to find that defendant's maintenance of the trail at an incline constitutes a failure to use ordinary and reasonable care to keep the premises safe for plaintiff's use. Nor is there any basis to conclude that defendant was under a duty to warn of the steepness of the slope, such as it was, since that condition was perfectly obvious.

■ Regarding the condition of the trail at the time in question, the evidence demonstrated that it has not changed much in some years; that the soil is varied and contains small rocks of various sizes; that ryolite, a volcanic substance is the most common base rock in the area and that examination by a Park Ranger immediately after the fall did not disclose any unusual features about the ground such as a build-up of rocks. In view of the natural condition of the trail, it does not appear that the Park Service either could have or should have taken steps to remove the small rocks from the soil in which they were situate. Furthermore, the soil condition was visible to those walking upon it. That the soil and slope presented no unreasonable danger is a conclusion reinforced by the absence of other incidents reported. (See L. W. Hill and T. A. Pittenger's testimony.)

■ As to the failure to erect boardwalks and hand rails, this decision, as discussed above, comes within the discretionary function exception and no liability may attach therefor. Even if the defendant's decision is not deemed discretionary, the evidence shows that the lack of boardwalks or hand rails in the area had not resulted in any reported injuries to others, and further that plaintiff could have seen that the trail was unimproved by boardwalks or hand rails. To require that the government pave or boardwalk every area of the park where visitors might travel on penalty of liability for accidents such as this one would indeed render the government the insurer of the safety of all visitors to the Park. There is, therefore, no lack of ordinary and reasonable care on the part of the defendant in the failure to construct boardwalks and hand rails in the area where plaintiff fell.

As to the failure to post warning signs, no liability may attach for failure to warn of conditions which are obvious. All of the conditions of which plaintiffs complain—the steepness of the trail, the presence of gravel, and the lack of boardwalks or hand rails—were visible and obvious.

The duty imposed on the landowner is only to use *ordinary and reasonable* care to make the land safe. The theories (obligations) suggested by plaintiffs would go far beyond what is ordinary and reasonable, especially in the context of a park setting. To make the incline less steep in this area would require extensive grading or leveling of the surface. To remove all the rocks germane to the pathway would, in the words of Ranger Welker, require moving the whole mountain. To place boardwalks and hand rails on every segment of the path would be prohibitively expensive; and all of these measures would detract from that which draws visitors to our parks—the opportunity to observe scenic wonders and the beauty of nature, unspoiled insofar as possible by the touch of man.

It must be remembered that those who use our national parks must do so in keeping with the purpose of the national park system. Yellowstone is operated by the United States Department of the Interior, National Park Service, which is required to operate the national parks

. . . by such means and measures as conform to the fundamental purpose of the said parks . . . which purpose is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.

16 U.S.C. § 1.

While Mrs. Henretig unquestionably suffered an unfortunate injury, there is, on the facts presented, no basis for attributing her injury to any act or omission of the defendant. The comparatively primitive nature of this part of the trail and whatever dangers there might be from the incline of the path, the presence of rocks or the lack of boardwalks and rails were, or should have been known to Mrs. Henretig before she took this pathway. She might have chosen, under such circumstances, to proceed no further on that trail and remain in the more developed areas of the Park. Having elected to proceed, it was incumbent upon her, as upon all invitees, to use ordinary and reasonable care to avoid injury to herself. The pebbles upon which she states she lost her footing were an integral part of the trail itself, they were not invisible, nor did they suddenly spring out of or fall into her pathway, obstructing her further movement and causing the fall. The conclusion is inescapable that had she watched carefully the placement of her feet as she walked along this path, the fall would have been avoided. If negligence there be in this case, it is that of Mrs. Henretig and not of the defendant.

Having found no negligence on the part of the defendant, it is unnecessary to consider the amount of plaintiffs' damages.

Judgment will be entered in favor of the defendant and this cause dismissed with prejudice.