Bohdan ZUK, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 87-0934-CIV.

United States District Court,
S.D. Florida.

Oct. 6, 1988.

Paul J. Levine, Spence, Payne, Masington, Grossman & Needle, P.A., Miami, Fla., for plaintiff.

Dexter W. Lehtinen, Suzan Hill Panzoli, U.S. Attys. Office, Miami, Fla., for defendant.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

HOEVELER, District Judge.

THIS CAUSE came before the court upon Defendant's Motion for Summary Judgment.

BACKGROUND

The instant litigation involves a Federal Tort Claims Act ("FTCA") suit brought against the federal government for injuries suffered by plaintiff, a visitor to Fort Jefferson National Monument ("Fort"). The Fort is a unit of the National Park System ("NPS") and is located on Garden Key in the Dry Tortugas, Florida. The Fort contains over 2,000 arches which are open to the ground, some of which are found on the second level of the Fort. There are no physical safeguards of any sort around any of the open arches, though there are various written warnings observable in certain

areas of the Fort concerning the dangerous nature of the Fort's wall edges and walkways. One such warning is the first marker on the self-guided tour route, which warns of "high places without handrails" (Defendant's Exhibit D). The second level of the Fort contains no written warnings whatsoever.

No fees are charged for entrance or admission to Fort Jefferson. However, the federal government charges a $50 fee for two year special use permits used by chartered seaplanes as well as fishing and dive boats. There are also no fees charged to boats that bring passengers to the Fort. Books, postcards and photographs are sold by a non-profit cooperating organization on the premises, revenues of which go to the non-profit organization.

On or about May 5, 1986, Plaintiff visited Fort Jefferson, and as part of a self-guided tour, he engaged in viewing the park's scenery from the second level of the Fort. While on the second level, Plaintiff walked backwards and fell off an open casemate (arch) and injured himself.

DISCUSSION:

Summary judgment is appropriate only where there is no genuine issue as to any material fact, and where the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). A party who moves for summary judgment bears the exacting burden of demonstrating that there are no genuine disputes as to any material fact in the case. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In determining whether the movant has met this burden, the court must view the evidence and all factual inferences permissible in the light most favorable to the party opposing the motion. *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir.1981). However, the non-moving party cannot rest upon mere allegations, but must rebut any facts properly presented by the moving party through affidavits or other evidence demonstrating the existence of a genuine and material issue of fact for trial. *Adickes*, 398 U.S. at 155, 90 S.Ct. at 1607. Moreover, summary judgment is mandated if, after adequate time for discovery, the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 273 (1986).

Defendant moves for summary judgment on two grounds. First, Defendant contends that the government's decision not to provide physical safeguards (e.g. handrailings, warnings) in the area where Plaintiff fell and was injured is a discretionary function, for which the government does not waive its sovereign immunity. The government further suggests that, even if the decision not to provide physical safeguards is not a discretionary decision, no duty was owed to Plaintiff to provide such safeguards. Secondly, the government argues that the Florida Recreational Use Statute, Fla.Stat. § 375.251, which limits the liability of persons who make available to the public certain areas for recreational use, applies to bar this FTCA suit. The government states that Section 375.251 applies to the instant action because Fort Jefferson National Monument is within Florida's state boundaries, the injury to plaintiff occurred in a park where no entrance fee is charged, and no "commercial activity" occurred in the area of the park where Plaintiff's injury took place.

*I. Whether the discretionary function exception to the FTCA applies to bar this action.*

The FTCA is a limited waiver of sovereign immunity, in which the government waives its sovereign immunity "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §§ 1346(b), 2674; *McCorkle v. United States*, 737 F.2d 957, 959 (11th Cir.1984). However, there are a number of statutory exceptions to this waiver under which the government did not waive its sovereign immunity. *See* 28 U.S.C. § 2680. One such exception to the government's waiver of

sovereign immunity for tort actions, provides that the government does not waive its sovereign immunity for "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

A. Whether the discretionary function exception to the FTCA bars the suit with regard to the non-installment of guardrails and whether Defendant had a duty with respect to the installment of guardrails.

Defendant first contends that the decision not to place guardrails along the dangerous embankment, is a discretionary decision, and thus an exception to liability under the FTCA. In *Dalehite v. U.S.*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the Supreme Court held that the discretionary function "includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations ... [w]here there is room for policy judgment and decision there is discretion." In *United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), which reaffirmed *Dalehite*, the Supreme Court noted that government decisions based on policy factors are immunized because "Congress wished to prevent judicial second guessing of legislative and administrative decisions grounded in social, economic and political policy." *Id.* at 814, 104 S.Ct. at 2765. Drawing from those decisions, Defendant suggests that the decision not to install guardrails is an administrative policy decision which is therefore discretionary in nature and thus, immune to judicial scrutiny under the FTCA.

Furthermore, defendant claims that decisions made by the NPS, at the policy-making level, are discretionary ones. Defendant points out that because the NPS is to preserve the "fundamental purpose of the park by "[conserving] the scenery and historical objects ... by such means as will leave them unimpaired for the enjoyment of future generations," the decision not to install guardrails in order to preserve the historic structure in its existing form is a policy decision consistent with congressional intent and effectively mandated by congress, thereby shielding the government from liability under the FTCA. *See* 16 U.S.C. § 1.

Defendant also refers to a number of cases in which courts have held that the government did not have a duty to provide guardrails in national parks or monuments. *Henretig v. United States*, 490 F.Supp. 398 (S.D.Fla.1980); *Bowman v. U.S.*, 820 F.2d 1393 (4th Cir.1987); *Lewis v. U.S.*, 508 F.Supp. 565 (E.D.Mo.1980), aff'd, 663 F.2d 818 (8th Cir.1981). Plaintiff argues that the cases cited by the government are inapplicable because they dealt with the issue of whether a duty is owed by the government with respect to the implementation of safeguards and not whether such a decision is of a discretionary type.

Plaintiff further argues that, even if the decision to install guardrails was a discretionary one, once the defendant decided to provide for safety by placing warnings in certain areas of the Fort, it had a duty to provide for safety in a non-negligent manner. Plaintiff cites a number of cases which essentially hold that once the government decided to undertake a certain responsibility, it had a duty to operate or perform that responsibility without negligence. *See Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *Rise v. United States*, 630 F.2d 1068 (5th Cir.1980); *Denham v. United States*, 834 F.2d 518 (5th Cir.1987).

■ A reading of this court's decision in *Henretig* makes clear that the failure to erect guardrails comes within the discretionary function exception and no liability may attach to the government therefor. *Henretig*, 490 F.Supp. at 404; *Smith v. U.S.*, 383 F.Supp. 1076 (D.Wyo.1974), *affirmed, Smith v. U.S.*, 546 F.2d 872 (10th Cir.1976); *see also Dalehite v. U.S.*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). Furthermore, even if such a decision is not deemed discretionary, the government argues, and Plaintiff offers no evidence to

the contrary, that no one other than Plaintiff has ever fallen from the second floor since the NPS began administering the Fort in 1935. To require the government to erect guardrails in every area of the park, where visitors might travel on penalty of liability for accidents such as this one, would render the government the insurer of the safety of all visitors to the Fort. *See Henretig*, 490 F.Supp. at 404. Therefore, there is neither a duty breached nor a lack of ordinary and reasonable care on the part of the Defendant in the failure to erect guardrails in the area where Plaintiff fell.

While Plaintiff is correct that once the government decides to undertake a certain responsibility, it has a duty to operate or perform that responsibility without negligence, this principle has no application to the instant case. Where the government did not decide to erect guardrails, the government's decision with respect to guardrails remains a planning one, which is exempt from suit under 28 U.S.C. § 2680. *See Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955).

B. Whether the decision not to implement warnings on the second level is a discretionary function and whether a duty to warn existed.

Both Plaintiff and Defendant raise the same arguments with respect to warnings as were raised and discussed above on the question of guardrails. Under Florida law, Plaintiff was a public invitee since he was invited to enter the recreational area as a member of the public for the purpose for which the recreational area was held open to the public. *Trowell v. United States*, 526 F.Supp. 1009 (M.D.Fla.1981); Restatement (Second) of Torts § 332. The duty of the landowner to an invitee is to use ordinary and reasonable care to keep the premises in a reasonably safe condition. *Wood v. Camp*, 284 So.2d 691 (Fla.1973); *Heath v. First Baptist Church*, 341 So.2d 265 (Fla. 2d DCA 1977); *Winn–Dixie Montgomery, Inc. v. Petterson*, 291 So.2d 666 (Fla. 1st DCA 1967). However, the owner is not required to ensure that the premises are absolutely safe. *Miami Coin–o–Wash, Inc. v. McGough*, 195 So.2d 227 (Fla. 3d DCA 1967). Furthermore, there is no duty to warn an invitee of visible or obvious hazards. *Miami Coin–o–Wash*, supra; *Bashaw v. Dyke*, 122 So.2d 507 (Fla. 1st DCA 1960).

As to the failure to post warning signs, no liability may attach for failure to warn of conditions which are obvious. *Henretig*, supra. In *Henretig*, this court determined that the conditions involved in Mrs. Henretig's fall on a path within Yellowstone National Park, which contained loose gravel and no guardrails "was or should have been known to her before she took the pathway." *Id.* at 405. As such, the court determined that "had she watched carefully the placement of her feet as she walked along this path, the fall would have been avoided." *Id.* at 405.

In the instant case, the presence of the high and dangerous surroundings where Plaintiff fell was or should have been known to Plaintiff before walking backwards and falling from one of the arches on the second level of the Fort. The arches on the second floor are open to the ground and obvious from virtually any area of the Fort. Moreover, in this case, there were multiple warnings telling visitors to be cautious. *See* United States' Motion for Summary Judgment, Exhibits A, C, D. As in *Henretig*, supra, had Plaintiff in this case watched the placement of his feet and location where he was walking, the injury would have been avoided. If there was negligence in this case, it was that of Plaintiff and not Defendant.

█ Plaintiff's reliance on the principle that once the government decides to undertake a certain responsibility, it has a duty to operate or perform that responsibility without negligence is again misplaced with respect to the issue of warnings. Plaintiff contends that the government's decision not to place warnings in the area where Plaintiff fell, despite the fact that a decision had already been made to place warnings in other areas of the Fort, is an operational decision which places a duty on the government to carry out this undertaking without negligence. However, the cases

cited by Plaintiff do not support his position. The effect of *Indian Towing,* supra, was to require the government to operate the particular lighthouse in question in a non-negligent manner. Furthermore, *Wysinger v. United States,* 784 F.2d 1252, 1254 (5th Cir.1980) suggests that once the government decides to place a lifeguard on duty in a national forest, it is responsible for that lifeguard's negligence. However, *Wysinger* held that the governmental decision not to have a lifeguard at a developed swim site in the forest fell within the "discretionary function" exception to FTCA jurisdiction. *Id.* As in *Wysinger,* the decision not to place warnings in the area where Plaintiff fell was a discretionary one. The line of cases relied upon by Plaintiff would only apply to the instant case if the government had decided to post warning signs in the area where Plaintiff fell, in which case the government would have been under a duty to provide for such warnings in a non-negligent manner. Having decided not to provide warnings in the area where Plaintiff's injuries occurred, the government's planning level decision is not transformed into an operational one. It would seem appropriate here to reiterate the obvious nature of the physical condition of the premises. For the reasons stated above summary judgment should be granted. Another basis for the entry of judgment will be discussed hereafter.

## II. Whether the Florida Recreational Use Statute applies to bar the FTCA suit.

Even if the "discretionary function" exception to the FTCA did not result in the entry of summary judgment in favor of Defendant in this case, there is a second ground upon which summary judgment must be entered in favor of Defendant.

### A. Fort Jefferson is within Florida's boundaries and therefore the statute is not applied extraterritorially.

Defendant asserts that recovery in this lawsuit is further precluded by the Florida recreational use statute, Fla.Stat. § 375.251. This statute serves to limit the liability of persons who make available to the public certain areas for recreational purposes without charge. The statute specifies under subsection (2)(a) that the same entity owes no duty of care to keep the park area safe or to give warnings to persons on the park area of any hazardous conditions.

Plaintiff argues that Fla.Stat. § 375.251 does not apply because Fort Jefferson is located in the Dry Tortugas and not within the state of Florida. Contrary to Plaintiff's position, the Florida Constitution, Article II, § 1, defines Florida's boundaries to encompass all land and water from the "Florida reefs, to a point due south of and three leagues from the southernmost point of the Marquesas Keys; thence *'westerly along a straight line to a point due south of and three leagues from Loggerhead Key, the westernmost of the Dry Tortugas Islands.'*" (emphasis added). Because all the Dry Tortugas Islands are within Florida's boundaries and because Fort Jefferson is on the Dry Tortugas, it is located within the state boundaries.

### B. Whether application of the Florida Recreational Use Statute is preempted by Federal law in this suit and therefore not available to bar this suit.

█ Plaintiff claims that the application of the Florida recreational use statute is preempted by Federal law in this FTCA suit. Contrary to Plaintiff's position, Fla. Stat. § 375.251 applies to FTCA actions where the requirements of the statute are met. *Kleer v. U.S.,* 761 F.2d 1492, 1493 (11th Cir.1985). In *Kleer,* the Eleventh Circuit affirmed the district court's ruling that § 375.251 applied to bar an FTCA suit involving a national forest area. Therefore, both the FTCA and Fla.Stat. § 375.251 are applicable to the instant action.

### C. Whether Fla.Stat. § 375.251(2)(b) precludes the suit from being barred where no charge was made for entering or using the area of the park in which the injury occurred, and where the injury occurred in an area of the park where "commercial activity" did not take place.

█ Subsection (2)(b) of Fla.Stat. § 375.251 contains two clauses which, ac-

cording to Defendant, apply to bar the instant suit. First, this subsection provides that the Florida Recreational Use Statute shall not apply to discharge the duties and limit the liability of persons who make available to the public certain areas for recreational purposes "if there is any charge made or usually made for entering or using such park area or land, or any part thereof."

Plaintiff argues that while there is no admission charge, the air taxi service from Key West charges $99 for a round trip and the air taxi operator pays a $50 licensing fee to the operator. In fact, Plaintiff claims the government charges 26 different boat and seaplane charterers these licensing fees. However, this argument ignores the explicit language of the subsection. There is no dispute that the NPS, which operates Fort Jefferson, does not charge a fee for entry into the Park. The fact that licensing fees are charged to boat and seaplane charter operators or that fees are charged by private taxi services for transportation purposes does not change the fact that no charge is made for entering or using the park area.

■ Secondly, subsection (2)(b) also denies protection under the statute "if any commercial or other activity, whereby profit is derived from the patronage of the general public, is conducted on such park area or land, or any part thereof." Plaintiff first claims that charging fees for licenses constitutes "commercial activity" under Fla.Stat. § 375.251(2)(b). Defendant maintains that the licensing fees are regulatory in nature and enable the NPS to keep track of who is bringing visitors to Fort Jefferson and when. Further, Plaintiff suggests that the sale of photographs, postcards, and souvenirs, albeit by a non-profit agency for a non-profit group, constitutes "commercial activity" within the Fort.

The Eleventh Circuit recently rendered a decision on the "commercial activity" exception to the Florida Recreational Use Statute in a case very similar to the instant action. *Kleer*, supra. That case involved a visitor to the Ocala National Forest who sustained injuries when he dived off a bridge in the park area. Plaintiff brought an action against the government under the FTCA and the government argued that the action was barred by the Florida Recreational Use Statute. In *Kleer*, there was commercial activity in certain areas of the Ocala National Forest, but no commercial activity took place in the distinct area where Plaintiff was injured. Mr. Kleer asserted just as Plaintiff argues here, that the exception in (2)(b) denies protection to landowners who conduct commercial activity on any part of their land. However, the *Eleventh Circuit* held that the phrase "park area" in subsection (2)(b) "denotes something less than the entire parcel of land." *Kleer*, 761 F.Supp. at 1495. The court went on to hold that Fla.Stat. § 375.251(2)(b) bars suits for injuries sustained in areas of parks where no fee is charged and no commercial activity takes place. *Kleer*, 761 F.Supp. at 1495.

The clear intent of Fla.Stat. § 375.251 is, by its terms, to encourage persons to make their land available to the public for outdoor recreational purposes by limiting the liability of those persons. Fla.Stat. § 375.251(1). Plaintiff's construction of the statute is contrary to the very purpose of Fla.Stat. § 375.251. *See Kleer*, 761 F.2d at 1495. In the present case, it is undisputed that no commercial activity took place in the distinct area of Fort Jefferson where Plaintiff sustained injuries. As such, the "commercial activity" exception to Florida Recreational Use Statute does not apply to bar the statute's application to the instant case. *Kleer*, supra.

Therefore, since no fee is charged by the government for entrance to or for use of the park and no "commercial activity" occurred in the distinct area where Plaintiff was injured, Fla.Stat. § 375.251 applies to bar the instant FTCA action.

At oral argument on the instant motion, Plaintiff's counsel argued that Fla.Stat. § 375.251 should not be applied to this case because Fort Jefferson does not fall within the statutory definition of "outdoor recreation." The term "outdoor recreational purposes" as used in the statute includes, but

is not necessarily limited to, hunting, fishing, swimming, boating, camping, picknicking, hiking, pleasure driving, nature study, water skiing, motorcycling, and visiting historical, archaeological, scenic, or scientific sites. Fla.Stat. § 375.251(5). Though it may be argued that Plaintiff's injury did not occur outdoors, it is undisputed that the Fort building is a historical site. Because the Fort building is a historical site and the area which comprises Fort Jefferson is intended to be used for fishing, swimming, camping, picknicking, and nature study, the court finds that Fort Jefferson is within the purview of Fla.Stat. § 375.251.

Because of the dual and valid bases for the entry of judgment as outlined above, summary judgment will be entered for Defendant by separate order.