Lynn M. BUDDE, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. C 88–1056.

United States District Court, N.D. Iowa, E.D.

April 23, 1991.

Stephen J. Juergens, William C. Fuerste, Dubuque, Iowa, Richard H. Donohue, Baker & McKenzie, Chicago, Ill., for plaintiffs.

Paul C. Lillios, Asst. U.S. Atty., Cedar Rapids, Iowa, for defendant.

## ORDER

HANSEN, District Judge.

This matter is before the court on defendant's resisted motion for summary judgment, filed October 1, 1990; defendant's resisted motion to dismiss, filed October 1, 1990; and plaintiffs' counter-motion for summary judgment, filed October 12, 1990.

### Facts

This action is brought pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C.

§§ 1346, 2675. The following facts are undisputed. Plaintiffs are residents of Dubuque, Iowa. Plaintiff Lynn M. Budde is the wife of Lieutenant Commander Thomas J. Budde, United States Naval Reserve. In February 1986, Lieutenant Commander Budde was assigned to and serving at the Naval Air Station, Barbers Point, Hawaii, on a two week training mission. Mrs. Budde accompanied him. On February 19, 1986, Mrs. Budde and a friend, Wanda Gezik, were sunbathing and swimming at the officer's club pool at the Naval Air Station. Mrs. Budde was struck in the head by a piece of metal thrown by a riding mower operated by an employee of the Naval station, Robert M. Sears, who was cutting grass approximately 50 feet away.

There are other facts which are disputed. *Compare* defendant's statement of material facts, filed October 1, 1990, *with* plaintiffs' statement of undisputed material facts, filed October 12, 1990. However, the court must decide whether or not those facts are indeed disputed and whether or not the disputed facts are material under the governing law.

> [T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.... Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Nelson v. City of McGehee*, 876 F.2d 56, 57 (8th Cir.1989). The court also notes that some of the disputed "facts" are really disputes of law.

### Standard

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judg-

ment as a matter of law. *Kegel v. Runnels*, 793 F.2d 924, 926 (8th Cir.1986). Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmovant "may not simply rest on the hope of discrediting the movant's evidence at trial." *Matter of Citizens Loan & Sav. Co.*, 621 F.2d 911, 913 (8th Cir.1980). "To preclude the entry of summary judgment, the nonmovant must show that, on an element essential to [its] case and on which [it] will bear the burden of proof at trial, there are genuine issues of material fact." *Noll v. Petrovsky*, 828 F.2d 461, 462 (8th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert. denied*, 484 U.S. 1014, 108 S.Ct. 718, 98 L.Ed.2d 668 (1988). Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and not be such as merely to create a suspicion.'" *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Products, Inc. v. Herrick*, 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). In applying these standards, the court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. *Krause v. Perryman*, 827 F.2d 346, 350 (8th Cir.1987).

### Defendant's Summary Judgment Motion

Defendant argues that the Hawaii Recreational Use Statute, Haw.Rev.Stat. §§ 520-1 et seq. (1984), absolves the United States of liability for any injury to plaintiffs. Plaintiffs agree that the court should look to the Recreational Use Statute. Plaintiffs vigorously dispute whether or not that statute absolves the United States of liability for plaintiffs' injuries.

For ease of discussion and reference, the court sets forth the pertinent portions of the statute.

The purpose of this chapter is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

Haw.Rev.Stat. § 520–1.

"Charge" means the admission price or fee asked in return for invitation or permission to enter or go upon the land.

Haw.Rev.Stat. § 520–2(4).

"House guest" means any person specifically invited by the owner or a member of the owner's household to visit at the owner's home whether for dinner, or to a party, for conversation or any other similar purposes including for recreation. . . .

Haw.Rev.Stat. § 520–2(5).

Except as specifically recognized by or provided in section 520–6, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

Haw.Rev.Stat. § 520–3.

Except as specifically recognized by or provided in section 520–6, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

(1) Extend any assurance that the premises are safe for any purpose.

(2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

. . . .

Haw.Rev.Stat. § 520–4.

Nothing in this chapter limits in any way any liability which otherwise exists:

(1) For wilful or malicious failure to guard or warn against a dangerous condition, use, or structure which the owner knowingly creates or perpetuates and for wilful or malicious failure to guard or warn against a dangerous activity which the owner knowingly pursues or perpetuates.

(2) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, . . .

(3) For injuries suffered by a house guest while on the owner's premises, even though the injuries were incurred by the house guest while engaged in one or more [recreational activities].

Haw.Rev.Stat. § 520–5.

The most efficient approach to the summary judgment motion is to examine each of plaintiffs' arguments why the statute does not apply.

## A.  "House Guest"

Section 520–5(3) of the statute does not absolve a landowner from liabilities incurred by a "house guest" while that guest is on the owner's premises and engaged in recreational activities.  "House guest" is defined in § 520–2(5).

Plaintiffs state that, although the United States is not ordinarily thought of as having "house guests," the FTCA makes the United States liable "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  Plaintiffs essentially ask the court to view the naval base and the officers' club as a "house" and consider her a "guest" at the invitation of her husband, a member of the armed forces of the United States.  Defendant argues that Lynn Budde was not invited to go to Hawaii by the United States.  Defendant points to Lieutenant Commander Budde's orders which do not specifically invite Mrs. Budde to accompany him on his trip to Hawaii.  See orders, attached to defendant's memorandum in support of resistance, filed November 2, 1990.  Defendant also points to Lieutenant Commander Budde's testimony at his deposition where he states that it was he, and not the United States, who asked his wife to join him on the trip to Hawaii.  See deposition of Thomas Budde,

at 216–18, attached to defendant's memorandum in resistance.

Under the statutory definition, a "house guest" must be "specifically invited by the owner or a member of the owner's household." Haw.Rev.Stat. § 520–2(5). There is no evidence that the United States, as "owner," specifically invited Mrs. Budde. In order to fit under the statute, the court would have to consider the person who did invite Mrs. Budde, Lieutenant Commander Budde, to be a member of the United States' "household."

■ Although the parties have not cited any case authority, the court concludes that Mrs. Budde was not a "house guest" within the meaning of the Hawaii statute. Black's Law Dictionary (5th Ed.) defines "household" as "[a] family living together" or as "[t]hose who dwell under the same roof and compose a family." While the United States Navy may from time to time think of itself as one large family, the United States of America is neither husband, father, mother, wife, sister, brother or any other family member to its employees. While it may furnish Bachelor Officers' Quarters for the use of its employees while on active duty for the government's convenience, it does so in its capacity as an employer and not as a home owner, and it does not occupy those quarters with its employees as a family. The United States does not have a "home"; it maintains no "household." The antithesis of a house guest is one who pays for the use of the house. In this case a charge of $6.00 per night was made for Mrs. Budde's occupancy of her husband's quarters. In short, Lieutenant Commander Budde was not a member of the "household" of the United States because the United States has no "household." To hold that Mrs. Budde was a "house guest" would stretch the meaning of the statutory definition further that it can be rationally and logically interpreted. The court further notes that Hawaii's domestic abuse statute defines "family and household members" as "spouses or former spouses, parents, children, persons related by consanguinity, and persons jointly residing or formerly residing in the same dwelling unit." Haw.Rev.Stat. § 586–1 (1987). The Supreme Court of Hawaii has held that this language should be given its plain meaning. *See State v. Tripp,* 71 Haw. 479, 795 P.2d 280, 282 (1990). This court can do no less in construing the word "household" in the Recreational Use Statute.

### B. Private v. Public Club

■ Plaintiffs argue that the swimming pool was a "private club" because it is not open to the general public, but rather open only to officers, their immediate families, and certain high-ranking civilian employees. However, the United States District Court for the District of Hawaii has stated that the statute applies to military property even though such property is not open to the general public. *See Palmer v. United States,* 742 F.Supp. 1068, 1072 (D.Haw. 1990), *aff'd,* 945 F.2d 1134 (9th Cir.1991); *Stout v. United States,* 696 F.Supp. 538, 539 (D.Haw.1987); *Collard v. United States,* 691 F.Supp. 256, 257–58 (D.Haw. 1988). *Stout* notes that a landowner is protected by the statute even though he limits access, provided that in limiting access he does not impose a "charge" for the recreational use and providing that the persons to whom access is limited are not "house guests." *Stout,* 696 F.Supp. at 539.

### C. Charge

Plaintiffs argue that the United States is not protected by the statute because the United States received a charge or fee for using the recreational facilities. The statute does not protect landowners who impose a "charge" for the recreational use of their property. Haw.Rev.Stat. § 520–5(2). Under the statute, "charge" is defined as an "admission price or fee asked in return for invitation or permission to enter or go upon the land." Haw.Rev.Stat. § 520–2(4).

The United States District Court for the District of Hawaii discussed this feature of the statute in *Viess v. Sea Enterprises Corp.,* 634 F.Supp. 226, 229 (D.Haw.1986), as follows:

This exception is much narrower than the general provision found in other recreational use statutes, which states that an owner may not escape liability where he receives consideration as a result of entry to his property. Such phrasing might permit the finding of liability where the defendant obtains some less obvious benefit from plaintiff's use of his land.

The Hawaii statute, in contrast, speaks only to the explicit *quid pro quo* arrangement whereby a landowner conditions admission to the land upon payment of a fee.

*Id.* at 229. In *Viess* the only arguable fee charged was the fee by one of the defendants there for the use of a surfboard. In finding that no "charge" had been imposed, the court noted that the defendant owner of the beach "made no direct charge upon plaintiffs in return for access to the beach." *Id.* at 229.

Plaintiffs raise four possible sources for the alleged "charge" for the use of the swimming pool.

■ First, plaintiffs assert that the $6 per person per night fee to stay at the Bachelor Officers' Quarters is income to the Navy which helps defray the costs of operating the facility, including the recreational facilities. Plaintiffs cite to *Douglas v. Dewey*, 154 Wis.2d 451, 453 N.W.2d 500, *review denied*, 454 N.W.2d 805 (Wis.1990), and *Kesner v. Trenton*, 158 W.Va. 997, 216 S.E.2d 880, 86 A.L.R.3d 1009 (1975). However, these cases involve statutes whose definitions of "charge" are broader in scope than Hawaii's statute. These cases find that liability under the relevant statute is not precluded when the landowner receives an indirect pecuniary benefit for use of the land rather than a direct "charge." *See Douglas*, 453 N.W.2d at 503–05; *Kesner*, 216 S.E.2d 880, 86 A.L.R.3d at 1015. This court chooses to follow *Viess*. *See generally Twohig v. United States*, 711 F.Supp. 560, 562–63 (D.Mont.1989) (discussing difference between the two types of statutes). This $6 fee was not a direct quid pro quo for the use of the swimming pool. In fact, Mrs. Budde was allowed the use of

the pool because of her status as the dependent of an officer and not because she was paying to stay in her husband's quarters. She was eligible to use the pool regardless of where she was temporarily residing.

■ The second argument is that the compensation of officers paid by the Navy constitutes a "charge." This somewhat convoluted argument is as follows:

A military officer is deemed an "employee" under 28 U.S.C. § 2671. A private individual under similar circumstances would be the employer providing a restricted club for the fringe benefit of, e.g., its key or management employees. It is as much a "charge" where the charge is paid by an employer on the employees' behalf as compensation to the employee, as when it is paid by the employee directly.... Whether the Navy pays the officers and the officers directly pay the operating costs of the Officers' Club, or the Navy directly pays the operating costs of the Officers' Club on behalf of the officers, or there is some combination of the two, the fact remains that the operating costs of the Officers' Club are essentially "charged" against the total pay the officers receive from the Navy.

Plaintiffs' memorandum of authorities re: motions for summary judgment, filed October 12, 1990, at 12–13. The court rejects this argument in accordance with *Viess*, which interprets the statute to require a *direct* quid pro quo charge for the use of the recreational facilities.

■ Plaintiffs' third argument is that the friend who accompanied Mrs. Budde to the pool testified in her deposition that the Navy received a specific charge for each guest for use of the facilities. Her testimony is as follows:

Q. Have you ever paid for the pool?
A. No.

. . . .

A. Only your guests have to pay.
Q. But you were not a guest?
A. No.

Q. Okay. And at the time of February of '86 did you have to pay to go into the pool?

A. I don't remember.

Q. Do you remember if Mrs. Budde had to pay?

A. I really don't remember.

Deposition of Wanda Gezik, at 54 (attached to plaintiffs' memorandum).

Defendant points to the deposition testimony of Mrs. Budde.

Q. Did you have to pay anything to use the pool?

A. No. No.

Deposition of Lynn Budde, at 138 (attached to defendant's appendix, filed October 1, 1990). Defendant further points to the deposition testimony of Cynthia Torricer, division director of the Recreation Services Department at Barber's Point, who testified that, to the best of her knowledge, Mrs. Budde was not charged for admission to the pool and that it was not the practice of the department to charge users of the pool admission. *See* deposition of Cynthia Torricer, at 22 (attached to defendant's appendix). The court finds that "the facts and circumstances relied upon," i.e., the deposition testimony of Wanda Gezik, does not "attain the dignity of substantial evidence," and thus, there is no genuine issue of material fact present on this issue. *See Metge*, 762 F.2d at 625.

The fourth argument is that the sales of food and drink at the Officers' Club bar and restaurant constitutes an indirect charge for the use of the swimming pool. Plaintiffs rely upon *Kesner*. As previously discussed, this court finds, in accordance with *Viess*, that a direct "charge" is required. This argument is rejected.

In sum, the court finds that, as a matter of law, no "charge," within the meaning of the Hawaii Recreational Use Statute, for the use of the swimming pool was required of Mrs. Budde.

*D.  Respondeat Superior*

Plaintiffs' final argument is that the Hawaii Recreational Use Statute addresses only the liability of a landowner by virtue of his status as a landowner and does not limit the United States' liability with respect to legal bases of liability arising out of the law of master and servant or principal and agent. Plaintiffs argue that:

The United States' liability for the negligent acts of its employee while mowing a lawn inside the fenced area of a swimming pool is not affected by Hawaii's Recreational Use Statute. The fact that Lynn Budde was on United States land is incidental. The same accident could also occur if Lynn Budde were not on United States property, but adjacent to it, and was hit by something thrown from a lawnmower operated by a United States Navy employee on the United States military reservation. The United States' ownership of the property would not affect the theories of that litigation any more than it should affect this litigation.

Plaintiffs' memorandum, filed October 12, 1990, at 6–7. Plaintiffs have cited no cases in this section of their brief. In particular, the court notes that plaintiffs have cited no cases or statutes regarding the Hawaii law of respondeat superior liability.

In response, defendant cites to *Hegg v. United States*, 817 F.2d 1328 (8th Cir.1987), a case which involved negligent conduct by a government employee which was dismissed pursuant to the Iowa state recreational use statute. Defendant also cites to three other cases involving negligent acts by government employees where the United States was shielded from liability by a recreational use statute. *See Cox v. United States*, 881 F.2d 893 (10th Cir.1989); *O'Neal v. United States*, 814 F.2d 1285 (9th Cir.1987); *Collard v. United States*, 691 F.Supp. 256 (D.Haw.1988). The court notes that the issue of any potential respondeat superior liability was not raised or discussed in these cases. This court's research has disclosed no cases on point.

Defendant suggests that the court closely examine the language of the Hawaii Recreational Use Statute. Sections 520–3 and 520–4 provide that the owner of the land owes no duty of care to persons using the land for recreational purposes. Under § 520–3, the landowner owes recreational

users no duty to keep the premises safe or to warn of any dangerous activity. Plaintiffs do not dispute that Lynn Budde was on the land for a recreational purpose. The statute, by its terms, applies.

Plaintiffs have presented no authority which suggests that the statute distinguishes between a landowner's own negligent acts or omissions and negligent acts or omissions by an employee or agent of the landowner. The court notes that there is no allegation of wilful or malicious conduct within the meaning of § 520–5(1). *See* plaintiffs' complaint, filed December 13, 1988, para. 7 ("The proximate cause of the aforesaid incident and resulting injuries to Plaintiff Lynn M. Budde was the negligence of said Robert M. Sears and other United States Navy agents and employees of the United States."). In *Proud v. United States,* 723 F.2d 705 (9th Cir.), *cert. denied,* 467 U.S. 1252, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984), the court held that the liability of the United States under the FTCA is the same as that of a private individual and that the United States is treated as a similarly situated private individual for the purposes of the Hawaii Recreational Use Statute. However, as the United States is not an individual, the United States cannot commit a negligent act or omission without a negligent act or omission by an employee or employees of the United States. Given the number of cases which have found the United States protected by recreational use statutes, the court cannot find that the United States is not protected by the Hawaii recreational use statute and is liable under a theory of respondeat superior.

· Further, "[i]n order to establish the Government's liability in tort under the Tort Claims Act, plaintiffs must show that, under state law, a private individual would be liable in like circumstances for similar conduct." *Collard,* 691 F.Supp. at 257 (citing *Platts v. United States,* 658 F.Supp. 850, 853 (D.Me.1987)). *See also United States v. Muniz,* 374 U.S. 150, 153, 83 S.Ct. 1850, 1853, 10 L.Ed.2d 805 (1963). Plaintiffs have made no showing, under the law of Hawaii, that given the facts of this case, the United States would be liable under a theory of respondeat superior and that the Hawaii Recreational Use Statute does not protect the United States under the circumstances of this case.

### Conclusion

The court finds that the United States is absolved of any liability in this matter by the Hawaii Recreational Use Statute. Defendant's motion for summary judgment will be granted. Plaintiffs' counter-motion for summary judgment will be denied. The court declines to address defendant's motion to dismiss as that motion is moot.

### ORDER:

Accordingly, It Is Ordered:

1. Defendant's motion for summary judgment, filed October 1, 1990, is granted.

2. Defendant's motion to dismiss, filed October 1, 1990, is denied as moot.

3. Plaintiffs' counter-motion for summary judgment, filed October 12, 1990, is denied.

4. This matter is dismissed. The clerk of court is directed to enter judgment in favor of defendant.

Done and Ordered.