Harry D. **FLOHR** and Sharon G. Flohr, in their own right and as guardians of Erin E. Flohr, Jennifer Flohr and Douglas Flohr and Harry Flohr Administrator of the Estate of Dana Marie Flohr,

v.

**PENNSYLVANIA POWER & LIGHT COMPANY.**

Civ. A. No. 91–4216.

United States District Court, E.D. Pennsylvania.

March 5, 1993.

---

William E. Haggerty, Morgan, Hallgren, Crosswell & Kane, Lancaster, PA, for plaintiffs.

Charles Wasilefski, Peters & Wasilefski, Harrisburg, PA, for defendant.

---

**MEMORANDUM & ORDER**

HUYETT, District Judge.

This action arises as a result of an accident which killed Dana Marie Flohr on July 3, 1989 when she and her family were fishing at Otter Creek Recreational Area. Defendant Pennsylvania Power And Light Company now moves for summary judgment in its favor pursuant to Fed.R.Civ.P. 56.[1] Plaintiffs, Harry and Sharon Flohr, in their own right and as guardians of Erin, Jennifer and Douglas Flohr, and Harry Flohr as Administrator of the Estate of Dana Marie Flohr, oppose defendant's motion for summary judgment. For the reasons stated below, I shall grant defendant Pennsylvania Power And Light Company's motion.

### I. Introduction

On or about July 3, 1989, plaintiffs ("the Flohr family") paid a fee to rent and use the facilities at the Otter Creek Recreational Area located in York County, Pennsylvania. The Otter Creek Recreational Area is owned by defendant Pennsylvania Power And Light Company ("PP & L"). On July 3, 1989, the Flohr family was fishing on the banks of the Otter Creek when a nearby tree fell across the creek and struck three members of the Flohr family. Sharon and Erin Flohr were both hit by the falling tree and sustained serious personal injuries. Dana Marie Flohr was hit directly by the tree and was killed. Harry Flohr was thrown into the Otter Creek by the impact of the falling tree. Plaintiffs allege that the tree that fell and caused these tragic events was in decaying and dangerous condition prior to falling across the Otter Creek.

At the time of the accident, the Flohr family was fishing from a bank of the Otter Creek which was part of Otter Creek Recreational Area. The tree that struck them was located across the creek from plaintiffs' fishing spot on an area of wilderness that was also owned by PP & L. The tree fell across the Otter Creek to the bank where the Flohr family was fishing.

---

1. Originally this action also named the Otter Creek Recreational Campground, Otter Creek Enterprises, Inc. and Allen and Fern Entrekin as defendants. However, by Order of March 19, 1992, the Court dismissed the case against Otter Creek Recreational Campground and Otter Creek Enterprises, Inc. In addition, defendants Allen Entrekin and Fern Entrekin were dismissed by stipulation on May 20, 1992.

Earlier in the course of this litigation, defendant filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) asserting immunity from suit under the Recreation Use of Land and Water Act 68 P.S. § 477–1 *et seq.* ("Recreation Act"). Plaintiffs responded by arguing that defendant PP & L was not immune under the statute because both of the exceptions contained at 68 P.S. § 477–6 applied to defendant. Specifically, plaintiffs contended that defendant could not assert immunity because (1) it charged a fee for the use of its land, and (2) its failure to guard against the dangerous condition of the tree was willful and malicious. 68 P.S. §§ 477–6(1) & (2). By Order of March 19, 1992, the Court denied defendant's motion to dismiss, holding that the charge exception of the Recreation Act did not apply to bar defendant's assertion of immunity, but that plaintiffs' Complaint did state a cause of action under the willful failure to warn or guard exception of Section 477–6(1). Order, March 19, 1992 at 14.

Defendant now moves for summary judgment pursuant to Fed.R.Civ.P. 56 on the grounds that discovery did not reveal facts which would support the application of the "willful or malicious" exception contained in Section 477–6(1). Therefore, defendant argues, the immunity provided under the Recreation Act is applicable and summary judgment should be entered in its favor.

Plaintiffs respond with several arguments which they urge preclude the entry of summary judgment. First, plaintiffs contend that defendant's failure to inspect and remove the obviously dangerous tree was a willful failure to guard or warn within the meaning of the Recreation Act. Second, plaintiffs request a reconsideration of the Court's Order of March 19, 1992, holding that the charge exception did not apply to defendant. Third, they argue that the land upon which the tree was located was not open to the public, thus the Recreation Act did not even apply. Finally, plaintiffs assert that those admissions that defendant failed to answer in a timely manner should be conclusively established as admissions for the purposes of a summary judgment motion, thereby precluding the entry of summary judg-

ment. I shall address each of these arguments in order.

## II. Discussion

### A. *Standard For Summary Judgment.*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court does not resolve questions of disputed fact, but rather simply decides whether there is a genuine issue of fact which must be resolved at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Ettinger v. Johnson,* 556 F.2d 692 (3d Cir.1977).

The facts must be viewed in the light most favorable to the non-moving party, and reasonable doubt as to the existence of a genuine issue of material fact is to be resolved against the moving party. *Continental Insurance Co. v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982). If the moving party succeeds in showing that there is no dispute as to any issue of material fact and that it is entitled to judgment as a matter of law, then the non-moving party must respond with information to the contrary, or it will lose. *National State Bank v. Federal Reserve Bank of New York,* 979 F.2d 1579 (3d Cir.1992).

### B. *Immunity Under The Recreation Use and Water Act—The Willfulness Exception*

The Pennsylvania legislature enacted the Recreation Act "to encourage owners of land to make land and water available to the public for recreational purposes by limiting their liability towards persons entering thereon for such purposes." 68 P.S. § 477–1.

The specific liability protection that the Recreation Act affords owners of land is included in 68 P.S. §§ 477–3 and 477–4. These sections state, in pertinent part:

§ 477–3 *Duty to keep premises safe; warning*

... [A]n owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

§ 477–4 *Assurance of safe premises; duty of care; responsibility, liability*

... [A]n owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

(1) Extend any assurance that the premises are safe for any purpose.

(2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

(3) Assume responsibility for or incur liability for any injury to persons or property caused by an act of omission of such persons.

68 P.S. §§ 477–3 & 4.

Landowners covered by the Recreation Act are protected from liability. Plaintiffs do not contest the status of defendants PP & L as owners, nor do plaintiffs question the Recreation Act's immunity provisions. Rather, plaintiffs argue that Section 477–6(1) of the Recreation Act permits the imposition of liability when landowners willfully or maliciously fail to guard or warn against a dangerous condition or structure. Essentially, plaintiffs contend that defendants willfully failed to guard or warn against the dangerous tree that struck the Flohr family because they knew that diseased trees along the banks of the Otter Creek presented a danger to those using the creek for recreational purposes.[2]

■■ As previously held in this Court's Order of March 19, 1992, willfulness under § 477–6 contains two elements: (1) actual knowledge of a danger; (2) that is not obvious to those entering the premises. *Livingston By Livingston*, 609 F.Supp. 643, 649 (E.D.Pa.1985), *aff'd*, 782 F.2d 1029 (3d Cir. 1986); *Kopp v. R.S. Noonan, Inc.*, 385 Pa. 460, 123 A.2d 429 (1956). Thus, the Court must determine whether, construing all evidence in the light most favorable to plaintiffs, any issue of material fact remains disputed as to whether defendant possessed actual knowledge that a danger existed which was not obvious to those entering Otter Creek Recreational Area.

According to plaintiffs, PP & L conducted a yearly inspection for trees on the property which posed a hazard and it inspected the premises daily during the season for purposes of safety. The person in charge of the inspection was Mark Arbogast, and the two people who actually inspected the area in question were Scott Straub and Ben Lefever. *See* Plaintiffs' Brief Opposing Defendant's Motion for Summary Judgment at 10. While plaintiffs have presented a convincing case that these persons *should have* discovered the dangerous condition of the tree in question, they have provided absolutely no evidence that they did have knowledge of the condition of the tree.

Plaintiffs' evidence in the form of affidavits, admissions and excerpts from certain depositions shows only that persons *other than* defendant, specifically arborist Greg Layton, saw evidence of disease on the tree in question. Further, plaintiffs' contention that Mr. Lefever and Mr. Straub were not qualified to perform a proper inspection because they were not arborists or foresters does not support their opposition to defendant's motion. The only pertinent inquiry is whether defendant had actual knowledge of the dangerous condition of the tree, not whether they should have had knowledge had they conducted proper inspections.

In contrast, defendant has presented sworn testimony of the PP & L representatives who saw the tree and were responsible for its inspection which clearly demonstrates their lack of knowledge. For example, both directors of the campsite, Paul and Sally Ann Breneman, testified in their depositions that following the accident they observed the tree and it was green and healthy appearing. (P. Breneman deposition, p. 33; S.A. Breneman deposition, p. 7). Further, Benjamin Lefever, who was responsible for inspecting the

---

**2.** Plaintiffs make no argument regarding malice. Thus, the Court will only address whether defendant's conduct rose to a level of willfulness under the Recreation Act.

tree for PP & L, examined the tree immediately following the accident and found it healthy with no evidence of disease. (B. Lefever deposition, pp. 40–41). Scott Straub, the other inspector testified that he did not ever look at the tree himself. (S. Straub deposition, p. 13). Finally, Mark W. Arbogast, the Land Management Superintendent at the Holtwood Land Management Office who was in charge of inspection, testified that the tree looked normal and health immediately after the accident and that nothing on the tree would have caused him to know the tree was going to fall. (M. Arbogast deposition, p. 31).

Clearly, defendant's evidence establishes that to the representatives of PP & L, the tree appeared to be healthy and normal. Plaintiffs have presented no evidence to contradict this simple material fact. While there is a definite dispute as to whether defendant could have or should have recognized the signs of disease—plaintiffs' witness Greg Layton testifying that the disease was obvious and defendant's witness Paul Canevari testifying that there would be no realistic way to detect root rot in an outwardly healthy tree—there is no dispute as to defendant's actual knowledge of the dangerous condition of the tree. Plaintiff has wholly failed to present any evidence that would contradict defendant's contentions and show that any representative of PP & L had knowledge of the dangerous condition of the tree.

In light of this shortcoming of evidence, I must find that there is no genuine issue as to the material fact of defendant's actual knowledge, or lack thereof. *Tilden Financial Corp. v. Palo Tire Service, Inc.*, 596 F.2d 604, 607 (3d Cir.1979) ("more than mere allegations are necessary to defeat a properly supported motion for summary judgment"). Therefore, the willfulness exception of 68 P.S. § 477–6(1) does not apply to defendant, and the immunity provided by the Recreation Act shields it from the liability that plaintiffs are attempting to invoke. *Livingston By Livingston*, 609 F.Supp. 643, 649 (E.D.Pa. 1985), *aff'd* 782 F.2d 1029 (3d Cir.1986). This is clearly a case in which the moving party has succeeded in showing that there is no

genuine issue of material fact and the non-moving party has failed to contradict that showing with evidence. Accordingly, I shall grant summary judgment in favor of the moving party. *National State Bank v. Federal Reserve Bank of New York*, 979 F.2d 1579 (3d Cir.1992).

C. *Plaintiffs' Request for Reconsideration of the March 19, 1992 Order Concerning the Charge Exception*

■ In addition to arguing that the "willful" exception of 68 P.S. § 477–6(1) applies to defendant, plaintiffs also request a reconsideration of the Court's Order of March 19, 1992 holding that the charge exception does not apply to defendant. Plaintiffs claim that they have come into possession of new information since that ruling which renders the Court's prior ruling erroneous.

Plaintiffs' new information consists of a map and a brochure. According to plaintiffs, the map shows that the perimeter of the campground extended to Otter Creek, including the fishing spot where the Flohr family was injured, and the brochure states that payment of a fee to enter the campground includes all the recreational activities in the park, including fishing. Hence, plaintiffs reason, the Court's holding that plaintiffs did not pay a fee in exchange for permission to enter the Otter Creek Recreation Area for the purpose of pursuing recreational activities is mistaken.

However, plaintiffs' argument is flawed in that the Court's holding in its March 19, 1992 Order does not hinge upon what the fee paid by the Flohr family covered or did not cover. Rather, the Court's holding was based on the fact that the camping fee paid by plaintiffs was not a quid pro quo in exchange for permission to enter Otter Creek at the time plaintiffs were fishing. If plaintiffs had only come to Otter Creek for the day, it is undisputed that they could have used the recreational facilities and fished at the accident site free of charge. *See* Proposed Pretrial Order at 2. Plaintiffs' new information does not change that simple fact, and therefore does not provide any basis for a reconsideration of the March 19 Order. As previously held in the March 19 Order, the exception in

68 P.S. § 477–6(2) does not preclude PP & L from asserting immunity from liability under the Recreation Act.

### D. *Plaintiffs' Contention That the Tree Was on Land Not Open to the Public*

Plaintiffs' next argument is that because the area where the tree was rooted was not used by the public, it was not within the scope of the Recreation Act's grant of immunity. Plaintiffs claim that the tree was located on land that, although owned by PP & L, was not part of the recreation area open to the public. However, plaintiffs do not present a scintilla of evidence to support this claim.

Instead, defendant has come forth with evidence in the form of deposition testimony that clearly establishes that the land on which the tree was located was not restricted and that the public could and did go on that land. Benjamin Lefever testified that the area where the tree was located was used by people for recreation and that it was not restricted. (B. Lefever deposition, pp. 11, 56). Mark Arbogast also testified that the area where the tree was located was not restricted and that people used that area. (M. Arbogast deposition, pp. 46–47).

Faced with defendant's evidence on this matter which directly contradicts plaintiffs' unsupported allegations, I must conclude that there is no genuine issue of material fact concerning the use of the land on which the tree was located. *Hideout Records & Distrib. v. El Jay Dee, Inc.*, 601 F.Supp. 1048, 1053 (Del.1984); 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727 (1983). Since the only evidence on the record clearly establishes that the land in question was open to the public and in fact used by the public, defendant is not precluded from asserting the immunity granted by 68 P.S. § 477–1 *et seq.* as asserted by plaintiffs.

### E. *The Effect of Defendant's Late Admissions*

Plaintiffs' final argument is that since defendant did not answer plaintiffs' Request for Admissions within the time period permitted by Federal Rule of Civil Procedure 36, the matters addressed in those requests should be deemed admitted pursuant to the Rule. Fed.R.Civ.P. 36.

However, part (b) of Rule 36 states that any matter deemed admitted under the Rule is conclusively established *unless* the Court permits withdrawal or amendment of the admission. Thus the Court can, at its discretion, permit what would otherwise be an untimely answer to a request for admissions. *See generally* 8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2257 (1970 & Supp.1992) and cases cited therein. The Court should normally permit untimely answers when doing so would aid in the presentation of the merits of the action and would not prejudice the party who made the requests. *Id.;* Fed.R.Civ.P. 36(b).

Plaintiffs have failed to show that they have relied on these supposed admissions to their detriment in this litigation. In fact, plaintiffs fail to disclose when defendant's answers were actually filed, or even to detail specifically what the supposed admissions said. In light of these facts, I do not find that plaintiff was seriously prejudiced by the untimeliness of defendant's answers. Further, I find that to permit defendant's untimely answers would aid in the resolution of this action on the undisputed material facts as presented at the summary judgment stage, and I shall therefore permit defendant's untimely answers pursuant to Fed. R.Civ.P. 36(b).

### IV. Conclusion

For the reasons stated above, I shall grant defendant PP & L's motion for summary judgment and enter judgment in favor of defendant.

An appropriate order follows.

### ORDER

Upon consideration of defendant Pennsylvania Power & Light Company's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, the response of plaintiffs, and for the reasons stated in the accompanying memorandum:

1. Defendant Pennsylvania Power & Light Company's motion for summary judgment is GRANTED.

2. Judgment is entered in favor of defendant Pennsylvania Power & Light Company and the Complaint is DISMISSED in its entirety.

IT IS SO ORDERED.