**Frances HOWARD, Plaintiff–Appellant,**

v.

**UNITED STATES of America; US Sailing Association, Inc.; Waikiki Yacht Club, a Hawaii corporation; Guy S. Fleming, Defendants–Appellees.**

No. 97–15857.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1998.

Submission Deferred April 27, 1999.

Resubmitted May 21, 1999.

Filed June 22, 1999.

Paul Cronin and Patrick McTernan, Cronin, Fried, Sekiya, Kekina & Fairbanks, Honolulu, Hawaii, for the plaintiff-appellant.

Brian M. Judge, United States Department of Justice, San Francisco, California, for defendant-appellee United States of America.

Calvin E. Young, Gail M. Kang, Steven L. Goto, Ayabe, Chong, Nishimoto, Sia and Nakamura, Honolulu, Hawaii, for defendants-appellees U.S. Sailing Association, Inc., and Guy S. Fleming.

Before: GOODWIN, BEEZER, and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

Frances Howard appeals the district court's judgment, after a bench trial, that the United States Government was immune from negligence liability for personal injuries suffered by Howard while she was using a military recreational facility. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

I.

The Government operates, controls and maintains Hickam Air Force Base ("Base") on the Island of Oahu, Hawaii. The Morale, Welfare and Recreation Program ("MWR") at the Base has an Outdoor Recreation Department which is responsible for maintaining and supervising the parks, beaches and boating facilities located on the Base. One of these facilities is the Hickam Harbor Recreational Facility ("Hickam Harbor" or the "Harbor").

Hickam Harbor is available to military personnel, their families and guests for a number of recreational pursuits, including boating, using private or rented boats; windsurfing, using private or rented wind-surf boards; picnicking; and swimming. The Harbor contains two floating docks, both owned by the Government—the Rhodes Dock and the Holder Dock. Howard was injured on the Holder Dock on June 4, 1993.

Howard, the wife of an active duty military officer, had just completed the afternoon sailing portion of the first day of a four-day sailing instructor course offered by U.S. Sailing Association, Inc., a private organization that conducts sailing training courses. On that day, the wind and sea conditions were rough, and there was a swell coming into the harbor. Howard began to leave the dock to return to the classroom when she noticed a loose sail covering the end of the gangway [1] to shore. As she stopped to gather the sail, an incoming swell caused the floating dock to abruptly move shoreward and the gangway rolled onto her foot. Her resulting injuries are the subject of this lawsuit.

Howard filed suit against the Government claiming that her injuries were caused by the Government's negligence.[2] After a bench trial, the district court granted judgment in favor of the Government on Howard's claims, concluding that the Government was immune from negligence liability under the Hawaii Recreational Use Statute ("HRUS"), Haw.Rev. Stat. §§ 520–1 to 520–8 (1993).[3] Howard timely appeals.

## II.

We review the district court's interpretation of both federal and state law

de novo. See Tierney v. Kupers, 128 F.3d 1310, 1311 (9th Cir.1997) (federal law); Palmer v. United States, 945 F.2d 1134, 1135 (9th Cir.1991) (state law). The district court's factual findings after a bench trial are reviewed for clear error. See Magnuson v. Video Yesteryear, 85 F.3d 1424, 1427 (9th Cir.1996).

## III.

Under the HRUS, a landowner who either directly or indirectly invites or permits, "without charge," another to use his or her property "for recreational purposes" is immune from negligence liability. See Haw.Rev.Stat. § 520–4. Howard argues that the HRUS does not apply to her case because (a) the Government imposed a "charge" for use of the facility; (b) the dock on which she was hurt was not "open to the public"; (c) she was a "business invitee" and the HRUS does not apply to "business invitees"; and (d) she was not engaged in a "recreational activity" when she was injured. We will address each of these arguments in turn.

### A. "Without Charge"

The first prerequisite to applicability of the HRUS is that the landowner must not "charge" those entering onto his or her land for recreational use. See Haw. Rev.Stat. § 520–5(2). The HRUS defines "charge" as "the admission price or fee asked in return for invitation or permission to enter or go upon the land." See Haw.Rev.Stat. § 520–2(4).

It is undisputed that the Government did not charge Howard or U.S. Sailing a fee to enter upon or use the Harbor. It is

---

1. The gangway connects the floating dock to the shore, with one end of the gangway permanently connected to the shore and the other end resting on a roller on the floating dock.

2. Howard later amended her complaint to add U.S. Sailing, the Waikiki Yacht Club and Guy S. Fleming as additional defendants. The district court dismissed Howard's claims

against these additional defendants because the statute of limitations had expired. Howard has not appealed the dismissal of these defendants.

3. The HRUS has been amended since the accident at issue in this case. All references to the HRUS are to the version in effect at the time of the accident in 1993.

also undisputed that the $175 fee that Howard paid to take the four-day sailing course was charged by, and paid exclusively to, U.S. Sailing.[4] The Government did not receive any portion of this fee. Based on these undisputed facts, we hold that Howard was not "charged" an "admission price or fee ... in return for ... permission to enter or ·go upon the [Government's] land." Haw.Rev.Stat. §§ 520–2, 520–4, 520–5(2).

Our holding is consistent with those cases that have interpreted the HRUS. For example, in *Viess v. Sea Enter.*, 634 F.Supp. 226, 226 (D.Haw.1986), the plaintiff was injured while boogie-boarding off Wailea Beach. The plaintiff and his companions had stopped at a hotel for lunch and decided to go swimming before lunch. *Id.* at 227. They rented a boogie board from a concessionaire on the beach and took turns using the board while swimming. *Id.* The plaintiff went into the water with the board and "while facing the shore, was struck from behind by a large wave which lifted him up and threw him on his head. The impact fractured his neck and rendered him quadriplegic." *Id.*.

The plaintiff sued, among others, Wailea Development ("Wailea"), the owner of the shoreline property above the mean high-tide mark where the accident occurred. *Id.* The district court granted Wailea's motion for summary judgment on the basis of immunity under the HRUS. *See id.* at 229–32.

In response to the plaintiff's argument that "Wailea has received economic benefit from allowing people to use the beach fronting its land,"[5] the court stated:

> [The "charge"] exception is much narrower than the general provision found in other recreational use statutes, which states that an owner may not escape liability where he receives consideration as a result of entry to his property. Such phrasing might permit the finding of liability where the defendant obtains some less obvious benefit from plaintiff's use of his land.

> The Hawaii statute, in contrast, speaks only to the explicit quid pro quo arrangement whereby a landowner conditions admission to the land upon payment of a fee. In the instant case ... from the time plaintiffs arrived at the hotel grounds to the time of the accident, the only fee solicited was from defendant [concessionaire] for the rental of the boogie board. That fee was in no way a prerequisite by Wailea for use of the public beach. Plaintiffs admit that defendant Wailea made no direct charge upon plaintiffs in return for access to the beach. The court, therefore, finds that the "charge" exception to [HRUS] immunity does not apply to defendant Wailea.

*Id.* at 229.

In *Budde v. United States*, 797 F.Supp. 731, 733 (N.D.Iowa 1991), the plaintiff was injured while sunbathing and swimming at the officer's club swimming pool at the Naval Air Station, Barbers Point, Hawaii. The plaintiff sued the Government to recover for the injuries she suffered. The district court granted summary judgment in favor of the Government, finding the Government immune from liability under the HRUS. *Id.* at 738.

The plaintiff argued that the Government was not immune under the HRUS because it had received a charge or fee. First, the plaintiff argued that the $6 per

---

**4.** Howard had just recently been hired by the MWR as a part-time sailing instructor at the Harbor. It is undisputed that the MWR encouraged Howard to take this sailing course but that the course was not required for her employment. It is also undisputed that Howard paid her own fee to take the course.

**5.** There was apparently an interrelationship between Wailea, the hotel and the concessionaire. Wailea and the hotel were both owned by common parent corporations. The hotel, in turn, leased the beach concession to the concessionaire that rented the boogie board to the plaintiff and his companions. *See* 634 F.Supp. at 229.

person per night charge to stay at the Bachelor Officers' Quarters was a "charge" under the HRUS. *Id.* at 736. The court rejected this argument, stating:

> This $6 fee was not a direct quid pro quo for the use of the swimming pool. In fact, [the plaintiff] was allowed the use of the pool because of her status as the dependent of an officer and not because she was paying to stay in her husband's quarters. She was eligible to use the pool regardless of where she was temporarily residing.

*Id.*

The district court similarly rejected plaintiff's second argument, that the "sales of food and drink at the Officer's Club bar and restaurant constitutes an indirect charge for the use of the swimming pool." *Id.* at 737.

In the present case, as in both *Viess* and *Budde,* the Government did not "charge" Howard for the use of its property. The "charge" exception to HRUS immunity does not, therefore, apply. *See Budde,* 797 F.Supp. at 736–37; *Viess,* 634 F.Supp. at 229; *see also Covington v. United States,* 916 F.Supp. 1511, 1521 n. 2 (D.Haw.1996), *aff'd,* 119 F.3d 5 (9th Cir.1997) ("[A]l-though the Warrens paid to use the picnic area behind the beach, this fee does not trigger the charge exception because it was not a prerequisite to Joshua's entry onto the beach.").

Howard argues, however, that the Government imposed a "charge" within the meaning of the HRUS because she had to pay U.S. Sailing $175 to take the course, and the Government "received a direct financial benefit" because U.S. Sailing allowed two Government employees to take the course at a 50% discount. In so arguing, Howard misses the distinction between the two different types of recreational use statutes that have been passed in the various states: (1) "charge" or "fee" statutes and (2) "consideration" statutes.

### 1. *"Charge" or "Fee" Statutes*

Most states that have passed recreational use statutes have provided that the grant of immunity will not apply if the permission to enter the land for the recreational purpose was granted for a "charge" or "fee." *See, e.g.,* Ark.Code Ann. §§ 18–11–305, 18–11–307; Colo.Rev.Stat. §§ 33–41–103, 33–41–104; Conn. Gen.Stat. §§ 52–557g, 52–557h; Del.Code. Ann. tit. 7, §§ 5904, 5906; Fla. Stat. Ann. § 375.251(2)(b); Pa. Stat. Ann. tit. 68, § 477–4; Wash. Rev.Code § 4.24.210.

Under these "charge" or "fee" statutes, most courts have declined to apply the exception to immunity unless an actual fee has been charged by the landowner for entry onto the land. For example, in *Jones v. United States,* 693 F.2d 1299, 1300 (9th Cir.1982), the plaintiff was injured in Olympic National Park while snow-sliding on an inner tube she had rented from a concessionaire. The concessionaire, located in the park on Government property, paid the Government a fixed rental fee and a percentage of its gross receipts. *Id.* at 1303.

In holding that no fee had been charged which would deny the Government its immunity under Washington's recreational use statute, this court noted that members of the public were not charged a fee to enter onto the land or to use the land, and that the plaintiff could have used the slope or any other area of the park free of charge if she had brought her own tube. *Id.* at 1303–04. The fee that the plaintiff had paid was simply a fee for use of the tube, not for use of the Government's land. *Id.* at 1303. The Government was therefore immune from liability. *See id.* at 1303–04.

In *Flohr v. Pennsylvania Power & Light Co.,* 821 F.Supp. 301, 302 (E.D.Pa. 1993), the plaintiffs were fishing on the banks of a creek in a recreational area owned by the defendant when a tree fell and struck them. The fishing spot where the plaintiffs were injured was within the perimeter of the defendant's campground

at which the plaintiffs were staying. *Id.* at 305. The court found that the defendant was entitled to immunity under Pennsylvania's recreational use statute despite the fact that the plaintiffs had paid a fee to use the campground. *See id.* at 305–06.

The court stated that its holding did "not hinge upon what the fee paid by the [plaintiffs] covered or did not cover." *Id.* at 305.

> Rather the ... holding was based on the fact that the camping fee paid by plaintiffs was not a quid pro quo in exchange for permission to enter Otter Creek at the time plaintiffs were fishing. If plaintiffs had only come to Otter Creek for the day, it is undisputed that they could have used the recreational facilities and fished at the accident site free of charge.

*Id.*

In *Zuk v. United States,* 698 F.Supp. 1577, 1577 (S.D.Fla.1988), the plaintiff was injured while visiting Fort Jefferson National Monument, a unit of the National Park System located in Florida. No fees were charged for entrance or admission to Fort Jefferson. *Id.* at 1578. The Government did charge a $50 biannual special use permit fee for chartered seaplanes and fishing and dive boats. *Id.* The Government did not, however, charge fees to boats bringing passengers to the Fort. *Id.*

The court held that the Government was immune from liability under Florida's recreational use statute. As to the plaintiff's argument that a "charge" was made because the air taxi service to the Fort charged $99 for a round trip, and the air taxi service (as well as twenty-five other boat and seaplane charterers) had to pay the Government a $50 biannual fee, the court stated:

> [T]his argument ignores the explicit language of the ["charge" exception]. There is no dispute that the [National Park Service], which operates Fort Jefferson, does not charge a fee for entry into the Park. The fact that licensing

fees are charged to boat and seaplane charter operators or that fees are charged by private taxi services for transportation purposes does not change the fact that no charge is made for entering or using the park area.

*Id.* at 1582; *see also Carlton v. Cleburne County,* 93 F.3d 505, 510 (8th Cir.1996) ("Because there was no entrance fee, or any other fee of any kind, paid in the instant case, we conclude the 'charge' exception to [Arkansas's recreational use statute] does not apply."); *Wilson v. United States,* 989 F.2d 953, 957 (8th Cir.1993) (holding that $2 per person/per night fee paid by Boy Scout troop to spend the night at Army military post was not a "charge" to enter onto the land or for use of the land and therefore did not fall within the "charge" exception); *Kirkland v. United States,* 930 F.Supp. 1443, 1446 (D.Colo. 1996) ("The [charge] definition suggests a quid pro quo arrangement whereby the owner conditions entry on the land upon payment of a fee.").

### 2. *"Consideration" Statutes*

Other states have passed recreational use statutes that do not extend immunity to landowners where the permission to enter the land for the recreational purpose was granted for a "consideration." *See, e.g.,* Cal. Civ.Code § 846; N.H.Rev.Stat. Ann. § 212:34(III)(c); N.J. Stat. Ann. § 2A:42A–4(b); Nev.Rev.Stat. § 41.510(3)(a)(2). The use of the term "consideration" in these statutes suggests that the legislatures intended a broad reading of the exception to immunity. *See Ducey v. United States,* 713 F.2d 504, 510 (9th Cir.1983). Under the consideration statutes, almost any form of benefit to the landowner will act to trigger the immunity exception.

For example, in *Ducey,* we held that the Government's receipt of 1-3/4% of a concessionaire's gross annual receipts from sales at a cafe-store and from boat slip and trailer space rentals located in a national recreational area owned by the Govern-

ment were sufficient to be "consideration" under the Nevada recreational use statute immunity exception. *See id.* at 507, 514. This was true even though the plaintiffs had not paid a fee or charge to enter the recreational area. *See id.* at 507; *see also Collins v. Martella,* 17 F.3d 1, 5 (1st Cir. 1994) (interpreting New Hampshire's recreational use statute immunity exception as requiring the defendant to somehow benefit from the consideration); *Hallacker v. National Bank & Trust Co.,* 806 F.2d 488, 489–492 (3d Cir.1986) (interpreting New Jersey's recreational use statute immunity exception as applying and thus *not* immunizing a landowner that was paid consideration by a friend of the plaintiff); *Casas v. United States,* 19 F.Supp.2d 1104, 1105–08 (C.D.Cal.1998) (interpreting California's recreational use statute to immunize the Government where the plaintiff, who had entered onto the Marine Corps Air Station to participate in a 5K race that was open to the public, did not have to pay consideration to enter onto the base and had not yet paid the $20 entry fee for the race at the time of her injury).

### 3. *The HRUS*

The HRUS clearly falls within the "charge" or "fee" category of recreational use statutes. As stated previously, the HRUS extends immunity to landowners who allow others to use their land without "charge." *See* Haw.Rev.Stat. §§ 520–4, 520–5(2). The HRUS defines "charge" as "the admission price or fee asked in return for invitation or permission to enter or go upon the land." Haw.Rev.Stat. § 520–2(4). This is the same definition that is used by several other states in their "charge" statutes. *See, e.g.,* Conn. Gen.Stat. § 52–557f(1) (" 'Charge' means the admission price or fee asked in return for invitation or permission to enter or go upon the land."); Del.Code. Ann. tit. 7, § 5902(4) (same); Pa. Stat. Ann. tit. 68, § 477–2(4) (same); *see also* Colo.Rev.Stat. § 33–41–102(1) (" 'Charge' means a consideration paid for entry upon or use of the land or

any facilities thereon or adjacent thereto.").

Howard's reliance on cases interpreting "consideration" statutes in support of her argument that she was charged a "fee" is misplaced. As we have previously recognized, the "consideration" exception is much broader than the "charge" or "fee" exception:

> [T]he language of the consideration exception itself suggests a broad reading.... The exception is worded not in narrow terms of "fee" or "charge," but rather in the far more encompassing terms, "for a consideration." "Consideration" is a term of art, a word with a well-understood meaning in the law, embracing any "right, interest, profit or benefit." Used in a statute, it should be accorded that meaning. The statutory exception, then, is itself literally applicable to situations well beyond those involving a strict charging of a "fee" for "permission" to recreate.

*Ducey,* 713 F.2d at 510 (citations and footnote omitted).

"The interpretation of the various recreational use statutes is controlled by the precise language of each statute." *Wilson,* 989 F.2d at 956. Thus, the only cases that will be applicable in analyzing the "charge" exception to the HRUS are cases interpreting statutes with the same language, i.e., the "charge" statutes. We therefore look only to those cases interpreting "charge" statutes in determining whether the Government is entitled to immunity under the HRUS and reject Howard's arguments that rely on cases interpreting "consideration" statutes.

In summary, we agree with the district court:

> It is not enough [under the HRUS] for a landowner to have received a benefit in return for a third-party's privilege to charge people.
>
> [ ] Here, MWR did not charge the Plaintiff or U.S. Sailing for entry onto the land. Although MWR did receive a

reduced fee for two of its employees, Plaintiff was paying for a service provided by U.S. Sailing, similar to the services provided by the surf board concessionaires in *Viess*, or the inner tube renters in *Jones*.

[ ] The statute's purpose prevents a private landowner who allows the public onto its land from actually running a business or other venture for commercial profit, injuring someone and then disclaiming liability. It is clear that even on the day in question, the Government itself did not charge anyone for the use of its facility, and in fact, could have made money if it had charged U.S. Sailing.

Because the Government did not impose a "charge" or "fee" for Howard to enter upon and use Hickam Harbor, Howard's use of the Government's property was "without charge" under the HRUS.

## B. *"Open to the Public"*

■ Howard argues that the dock on which Howard was injured was closed to the nonpaying public and that the Government is therefore not immune from suit under the HRUS.

The HRUS provides immunity to landowners who allow "any person" to use their property for recreational purposes "without charge." Haw.Rev.Stat. § 520–4. The HRUS lists three exceptions to this grant of immunity: (1) where injury is caused by the landowner's willful or malicious action or inaction; (2) where the landowner has charged "the person or persons" for the use of the land; and (3) where the injury is suffered by a "house guest" while on the owner's land. Haw. Rev.Stat. § 520–5. The HRUS does not contain a requirement that a landowner allow each and every individual of the general public access and use of the land; to the contrary, under the plain language of the statute, unless the landowner charges a fee or acts maliciously or willfully, the landowner is immunized for injury to "any person" using his or her land for recreational purposes *unless* that "person" is a "house guest." *See id.*

Hickam Harbor and the dock on which Howard was injured is open to military personnel, their families and their guests. Even if it is closed to the "general" public, the fact that it is open to the military public without charge is sufficient to qualify for immunity under the HRUS. *See Mansion v. United States*, 945 F.2d 1115, 1117–18 (9th Cir.1991) (rejecting plaintiff's contention "that only land owners who allow anyone and everyone free access to their property may claim recreational immunity"); *Budde*, 797 F.Supp. at 735 (rejecting argument that pool did not fall within the HRUS requirements because it was not open to the general public); *Stout v. United States*, 696 F.Supp. 538, 539 (D.Haw.1987) (stating that the "statute appears to apply even if the military base was closed to the general public").

■ The fact that Holder Dock was closed to everyone except the instructors and students of the sailing course on the day of Howard's injury does not strip the Government of its HRUS immunity. The Government limited access to the dock on that day to prevent injury to novice sailors and/or because of the rough weather conditions. The Government can exercise such control and discretion over who uses its land for recreational purposes without forfeiting the immunity that the HRUS provides. *See Stout*, 696 F.Supp. at 539 (recognizing that "a landowner can control who uses his land for recreational purposes," and that "[s]uch discretion should not result in the forfeiture of the immunity that [the HRUS] provides").

## C. *Applicability of HRUS Immunity to Business Invitees*

■ Howard admits that there is no express exception in the HRUS for business invitees; she argues, however, that the legislative history indicates that the HRUS was not intended to immunize busi-

nesses from liability to their business invitees.

The language of the HRUS is unambiguous and clearly extends immunity to any landowner who allows "any person" to enter onto his or her land "without charge" for "recreational purposes." Haw.Rev. Stat. § 520–4. The only exceptions to this grant of immunity are also stated in unambiguous terms: (1) where injury is caused by the landowner's willful or malicious acts or omissions; (2) where the landowner "charges" the person to enter or go on the land; and (3) where the injured party is a "house guest." Haw.Rev.Stat. § 520–5. There is, therefore, no need to resort to the legislative history of the HRUS in search of an exception that is clearly not included. *See United States v. Gonzales*, 520 U.S. 1, 117 S.Ct. 1032, 1035, 137 L.Ed.2d 132 (1997).

D. *"Recreational Purpose"*

■ The HRUS defines "recreational purpose" as including "hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites." Haw.Rev.Stat. § 520–2(3). Howard was engaged in the activity of boating, an activity explicitly included in the definition of "recreational purpose."

Howard argues, however, that she was not engaging in a "recreational activity" while taking the sailing course. She claims that the sailing course was "a professional-level course for persons who either were, or wished to become, professional sailing instructors"; that she did not interpret the course as "recreation" because she interpreted MWR's "encouragement" of her attendance "as an actual *requirement* that she do so"; and that she "hoped to use this training professionally in the future." In other words, Howard wants us to examine her subjective intent in taking the course and engaging in the activity of "boating" to determine whether it was "recreational." Her authority for

this approach is an unpublished order of the U.S. District Court for the District of Hawaii, *Chadwick v. United States*, No. 91–00138 (D.Haw. Oct. 19, 1993) (order denying Government's motion for summary judgment).

In *Chadwick*, the plaintiff was injured while taking a shortcut across Government property on the way to a concert. The property where the concert was being held was adjacent to the Government's property. The court held that although attending the concert was recreational, the plaintiff's route across Government property to get to the concert was not. *Id.* at 10–11. Therefore, the court held, the Government was not immune under the HRUS. *Id.* at 11. Howard relies on a single line from *Chadwick* to support her argument: "[T]he relevant focus in determining if the statute is applicable is on the intent of the user, rather than of the landowner." *Id.* at 10.

Howard's reliance on *Chadwick* is misplaced. First, *Chadwick* is inapplicable. The issue in *Chadwick* was ingress and egress, where a person is injured not on the property where the recreational activity has or will take place, but traveling to or from this property. *See id.* The HRUS's application to ingress or egress is not before us. Howard was actually engaged in recreational activity at the time of her injury.

■ Second, at least where ingress and egress are not at issue, to determine whether a landowner will be immune from liability under a recreational use statute, the proper focus is on the *landowner's* intent. For example, in *Gaeta v. Seattle City Light*, 54 Wash.App. 603, 774 P.2d 1255, 1258 (Wash.Ct.App.1989), the plaintiff was injured while crossing a roadway on a dam. He argued that his use was commercial and not recreational because he crossed the dam to reach a resort where he could purchase gasoline for his motorcycle. *Id.* The court stated:

We find the proper approach in deciding whether or not the recreational use act applies is to view it from the standpoint of the landowner or occupier. *If [the landowner] has brought himself within the terms of the statute, then it is not significant that a person coming onto the property may have some commercial purpose in mind.* By opening up the lands for recreational use without a fee, [the landowner] has brought itself under the protection of the immunity statute, and it therefore is immaterial that [the plaintiff] may have driven across the dam in search of gasoline at the resort.

Accordingly, we find that the recreational use act applies to the [landowner's] properties involved in this accident. *Id.* (emphasis added).

Similarly, in the present case, the Government has opened up its property at Hickam Harbor for recreational use without a fee. The activity of "boating" that Howard was undisputedly involved in falls within the HRUS's definition of "recreational activity." That Howard may have had a "professional" motive in enrolling in the sailing course is not relevant to the inquiry. *See id.; see also Palmer,* 945 F.2d at 1136–37 (rejecting plaintiff's argument that "he was engaged in the nonrecreational activity of supervising his grandchildren" while they were swimming and that the recreational statute did not apply because he "was not permitted to use the swimming pool"); *Silingo v. Village of Mukwonago,* 156 Wis.2d 536, 458 N.W.2d 379, 382 (Wis.Ct.App.) (rejecting a subjective test for determining whether an activity is "recreational" because it would not serve the goal of the recreational use statute); *but see Casas,* 19 F.Supp.2d at

1107 ("Because [the recreational use statute] applies when the person using the land has a recreational purpose, and not when the landowner has such a purpose, it applies in this case where the plaintiff came onto defendant's land for the recreational purpose of running in a race.").

Holding that it is the landowner's intent that controls whether the recreational use statute applies in this situation furthers the purpose of the HRUS of encouraging landowners to make land and water areas available to the public for recreational purposes. *See* Haw.Rev.Stat. § 520–1. As the Government points out: "If land owners were required to screen each individual entering their property to ensure that each and every person had a proper recreational purpose so that the HRUS applied, then landowners would not open their property at all, defeating the purpose of the statute."

In summary, although Howard may have had professional as well as personal reasons for taking the course,[6] her alleged "professional" motivation does not convert her into a "nonrecreational" user. Her subjective intent is, in this situation, immaterial.

## IV.

The district court's holding that the Government is immune from negligence liability under the HRUS is AFFIRMED.[7]

---

6. Howard's application form for this sailing course indicates that she was taking the course for personal as well as professional reasons. In response to the question of why she was taking the course, Howard listed: "Improve instructional methods, increase sailing knowledge, skills and techniques in dinghy boats, become competent in non-familiar boats, gain basic coaching techniques,

become qualified to instruct under USSA standards."

7. Because we affirm the district court's holding that the Government is immune under the HRUS, we need not address the other issues raised by the parties on appeal.