Mark KIRKLAND, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civil Action No. 95–K–1250.

United States District Court,
D. Colorado.

July 15, 1996.

Steven H. Schinker, Denver, CO, Joseph R. Winston, Colorado Springs, CO, Patric J. LeHouillier, Colorado Springs, CO, for plaintiff.

Michael Hegarty, Assistant U.S. Attorney, Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Plaintiff Mark Kirkland suffered injuries to his right fifth finger in October 1993 when an outhouse door at a National Forest Service campground slammed on it. Kirkland initiated this personal injury action two years later under the Federal Tort Claims Act, 28 U.S.C. §§ 1346 and 2671 *et seq.* (the "FTCA"). He alleges his injuries resulted from the government's negligence in: (1) failing to provide and maintain the privy and its door in a safe condition; (2) permitting him to enter the latrine even though it knew or should have known it was dangerous and unsafe to use; (3) failing to warn him of the danger presented by the facility; and (4) failing to provide adequate lighting in and around the w.c. He seeks compensation for his losses, including medical expenses; permanent scarring, impairment and disability; pain and suffering; lost earning potential and future income; and loss of life's enjoyment.

The United States moves for summary judgment on each of Kirkland's claims, contending that under the FTCA, it is entitled to the protection of the Colorado Recreational Use Statute ("CRUS"), Colo.Rev.Stat. §§ 33–

41–101 *et seq.* (1995 Repl.Vol.) In view of the pervasive legislative definition of "recreational use," I agree.

## I. *SUMMARY JUDGMENT STANDARD*

■ The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995). Rule 56(c) of the Federal Rules of Civil Procedure permits entry of summary judgment where the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

■ In applying this standard, I must view the factual record and reasonable inferences therefrom in the light most favorable to Kirkland, who is the nonmoving party. *Id.* If a reasonable trier of fact could not return a verdict for the nonmoving party, summary judgment is proper and there is no need for a trial. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If there is no genuine issue of material fact in dispute, I apply the substantive law to the facts presented to determine whether the moving party is entitled to judgment.

■ To avoid summary judgment, the nonmoving party must refer to specific facts, beyond those in the pleadings, and demonstrate the existence of a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *White* at 360. Unsupported allegations without "any significant probative evidence tending to support the complaint" are insufficient, *see White* at 360 (internal quote and citation omitted), as are conclusory assertions that factual disputes exist. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10, 91 L.Ed.2d 202 (1986).

## II. *FACTS*

Kirkland spent the night of October 16, 1993 at the Wigwam Campground in the Pike and San Isabel National Forest (the "Campground"). It is undisputed that at all times relevant to the issues presented, the Campground was owned, operated and maintained by the National Forest Service as an agency of the United States Department of Agriculture.[1] The Forest Service provided parking, public toilets and overnight camping on the premises. It did not charge the public for use of any of the facilities.

At 2:00 a.m. on October 17, 1993, Kirkland needed to avail himself of the jakes.[2] Upon entering, Kirkland "reached back with both hands in an attempt to prevent the bathroom door from slamming" shut. Pl.'s Compl., ¶ 10. The door did slam, however, "severely crushing and lacerating" the fifth finger on his right hand. *Id.,* ¶ 11. This action ensued.

## III. *MERITS*

■ The FTCA sets forth the circumstances under which the United States may be sued. "The terms of the government's consent to be sued define [federal courts'] jurisdiction." *Ewell v. United States,* 776 F.2d 246, 248 (10th Cir.1985). The FTCA only permits suits against the United States "'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Cox v. United States,* 881 F.2d 893, 894 (10th Cir.1989) (quoting 28 U.S.C. § 1346(b)); *see* 28 U.S.C. § 2674.

■ Colorado law shields private rural landowners from most tort liability for damages suffered by those who come onto their land to pursue recreational activities. *See* 33–41–101 (CRUS's "purpose ... is to encourage owners of land within rural areas to make land and water available for recreational purposes by limiting their liability toward persons entering thereon for such purposes"). Specifically, CRUS provides that

> an owner of land who either directly or indirectly invites or permits, without charge, any person to use such property for recreational purposes does not thereby:

---

**1.** After the events in question, the operation and maintenance of the Campground were transferred to a private owner.

**2.** I am not inclined to use the word "John" to describe this facility.

(a) Extend any assurance that the premises are safe for any purpose;

(b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed;

(c) Assume responsibility or incur liability for any injury to person or property or for the death of any person caused by an act or omission of such person.

Colo.Rev.Stat. § 33–41–103. CRUS defines "land" to include "buildings [and] structures" attached to real property, § 33–41–102(2), and includes "camping" in a list of uses of such land "for recreational purpose[s]." § 33–41–102(5).

■ The Tenth Circuit has repeatedly held that the United States is entitled to the protection of state recreational use statutes, including Colorado's CRUS, when it is sued under the FTCA. *See Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980) (government entitled to invoke CRUS), *applied in Maldonado v. United States*, 893 F.2d 267, 268–69 (10th Cir.1990) (government entitled to invoke New Mexico recreational use statute); *Klepper v. City of Milford, Kansas*, 825 F.2d 1440, 1450 (10th Cir.1987) (Kansas statute). *See also Cox*, 881 F.2d at 895 (Oklahoma statute); *Ewell*, 776 F.2d at 248–49 (Utah statute).[3] Kirkland nevertheless argues CRUS does not apply.

According to Kirkland, the United States should not be shielded from liability in this case because (1) he was "charged" for his use of the Campground; (2) his injury was received "on land incidental to the use of land on which a commercial or business enterprise was being carried on" under § 33–41–104(1)(d); and (3) he was an "invitee" to whom a duty of care was owed under Colora-

do's Landowner Liability Statute, Colo.Rev. Stat. § 13–21–115 *et seq.*[4]

### A. Taxpayer Status does not Satisfy CRUS's "Charge" Requirement

■ Kirkland acknowledges he paid no "fee" to use the Campground. His use of the Campground was nevertheless "with charge," he argues, because he is a "taxpaying citizen of the United States" whose taxes "[were] used as consideration for entry upon or use of the [Campground]." Resp.Mot.Summ.J. at 5. He cites no cases to support his argument, and I find it utterly without merit.

Under Kirkland's reasoning and except in the most unusual of circumstances, the United States would never be afforded the protections of state recreational use statutes and all of the cases holding to the contrary would have been wrongly decided. The result is untenable. A rule that has the government's entitlement to the protection of state recreational use statutes turn on the injured party's taxpaying status would create absurd results. The government would not be shielded from liability for injuries to taxpayers, but would be shielded from liability for injuries to the unemployed, tax dodgers, tax avoiders, trust funders, children, foreign visitors, aliens, mendicants, or any other recreational users who do not pay taxes.

■ Under CRUS, "charge" is defined as "consideration paid for entry upon or use of the land or any facilities thereon." §§ 33–41–102(1), 33–41–104(b). The definition suggests a *quid pro quo* arrangement whereby the owner conditions entry on the land upon payment of a fee. *See Budde v. United States*, 797 F.Supp. 731, 735–36 (N.D.Iowa 1991) (similar "charge" provision in Hawaii recreational use statute required *quid pro*

---

3. Numerous other courts have applied the same rationale to hold that the United States may invoke the protection of recreational use statutes. *See Cagle v. United States*, 937 F.2d 1073, 1075 (6th Cir.1991) (Tennessee statute); *O'Neal v. United States*, 814 F.2d 1285, 1287 (9th Cir.1987) (Oregon statute); *Proud v. United States*, 723 F.2d 705, 706–07 (9th Cir.) (Hawaii statute), *cert. denied*, 467 U.S. 1252, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984); *Mandel v. United States*, 719 F.2d 963, 966–67 (8th Cir.1983) (Arkansas statute); *Dorman v. United States*, 812 F.Supp. 685, 687 (S.D.Miss.1993) (Mississippi statute); *Hannon v. United States*, 801 F.Supp. 323, 326 (E.D.Cal.1992) (California statute).

4. Kirkland also argues that as a "public entity" owning land in Colorado, the United States is subject to liability for the "dangerous condition of a public building or facility" under Colorado's Governmental Immunity Act, Colo.Rev.Stat. § 24–10–101 *et seq.* (the "GIA"). The GIA is inapplicable to the question of whether the United States is liable to Kirkland and I reject the argument out of hand. "Congress, not the [Colorado] legislature, determined the scope of the federal government's tort liability when it enacted the FTCA." *Cox*, 881 F.2d at 895.

*quo* payment for use of recreational facility; $6 fee for staying at husband's temporary Navy quarters did not constitute "charge" for use of swimming pool). It is undisputed in this case that Kirkland paid no such fee.

B. *United States is not Subject to CRUS's "Commercial or Business Enterprise" Exception to Liability Limitation.*

█ CRUS section 33–41–104 identifies four circumstances under which a landowner's liability is not limited: A landowner is not protected from liability when it (a) "willful[ly] or malicious[ly] fail[s] to guard or warn against a known dangerous condition, use, structure, or activity likely to cause harm"; (b) "charges" the person for the recreational use of the land; (c) maintains an "attractive nuisance"; or (d) when injuries are received "on land incidental to the use of land on which a commercial or business enterprise of any description is being carried on." Colo.Rev.Stat. § 33–41–104(1)(a)–(d). Kirkland contends that because special use permits were granted outfitters and concessionaires in and around the Campground, his use of the toilet was a use "incidental to the use of land" on which commercial activity was being conducted. Resp.Mot.Dismiss at 6.

█ Even assuming the commercial conduct of private outfitters and concessionaires could be imputed to the owner of recreational lands, which is dubious in any event, Kirkland's argument is fundamentally flawed. The phrase "incidental to the use of land" requires that a nexus exist between the commercial or business enterprise and the use giving rise to the injury. *Smith v. Cutty's Inc.*, 742 P.2d 347, 349 (Colo.App.1987). Other than the conclusory assertion that existing "outfit and guide services for fishing as well [as] campground concessions were substantially related to Mr. Kirkland's recreational use of the [Campground]," Kirkland offers nothing to support the existence of such a nexus. He does not allege he had paid for outfitter services or that his use of the water closet was related to fishing or any use of Campground concessions.[5] Under these circumstances, Kirkland is not entitled to in-

voke CRUS's "commercial or business enterprise" exception. *See Kleer v. United States,* 761 F.2d 1492, 1495 (11th Cir.1985) (where no commercial activity took place in particular area where plaintiff sustained injuries, "commercial activity" exception did not bar recreational use statute's application); *Zuk v. United States,* 698 F.Supp. 1577, 1582 (S.D.Fla.1988) (same).

C. *United States did not Owe Kirkland Duty of Care as "Invitee" Under Colorado's Landowner Liability Statute.*

█ Finally, Kirkland argues that if the United States stands in the shoes of a private landowner under Colorado law, it is subject to the duties of care imposed by Colorado's Landowner Liability Statute, Colo.Rev.Stat. § 13–21–115 *et seq.* Under § 13–21–115(3)(c)(I), an "invitee" may recover against a private landowner for injuries "caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known." Asserting he was an "invitee" to the Campground, Kirkland maintains he is entitled to pursue this negligence action as a matter of law under § 13–21–115(3).

As an initial matter, CRUS more specifically applies to the situation presented. Kirkland entered onto rural land for recreational purposes. CRUS explicitly states that such persons are *not* "invitees" entitled to any duty of care. Colo.Rev.Stat. § 33–41–103(1)(b) (by "indirectly invit[ing] or permit[ting]" a person to use one's property for recreational purposes free of charge, a landowner "does not.... [c]onfer upon such person the legal status of an invitee or licensee to whom a duty of care is owed"). The purpose of this provision is to encourage rural landowners to make property available for recreational use by limiting their potential tort liability for doing so. Kirkland's reliance on Colorado's general landowner liability statute to invoke the protections afforded "invitees" renders meaningless the countervailing specific protections afforded recreational landowners under CRUS. It is therefore untenable. *See Jones v. Cox,* 828 P.2d 218, 223 (Colo.1992) (more specific statute controls over a more general one).

**5.** In fact, it is undisputed that Campground concessions were not in operation at the time of

Kirkland's activities. *See* Dep. of Lori Malcolm (attached to Pl.'s Resp.Mot.Summ.) at p. 10.

Further, there is no evidence in the record to suggest Kirkland was an "invitee," and, even if he were, that the loo was "dangerous," that the government knew or should have known it was "dangerous," or that the government unreasonably failed to exercise care to protect him against the "dangers of the dunny." At most, the existence of an outhouse implies an invitation to use it, rather than some other place or structure, for its obvious and historic purpose. Thus, even if the landowner liability statute applied, Kirkland would have failed to carry his burden under *Celotex* and *Liberty Lobby* of creating a triable issue as to the government's liability under it.

## IV. *CONCLUSION*

For the foregoing reasons, the United States' Motion for Summary Judgment is GRANTED, and this case is DISMISSED. The government has not asked for fees or costs, therefore, the parties are to bear their own.