**In re Eduardo and Annette QUINTERO, Debtors.**

**No. 99–34629.**

United States Bankruptcy Court,
N.D. Ohio.

Aug. 8, 2000.

John P. Goldenetz, Defiance, OH.

Louis Yoppolo, Toledo, OH.

### *MEMORANDUM OPINION AND DECISION*

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court upon the Trustee's Motion for Summary Judgment on the Trustee's Objection to Exemptions. The Trustee has submitted a Memorandum in Support of his Motion. In opposition thereto, the Debtors have filed a Motion To Disallow the Trustee's Objection. The Court, upon reviewing the arguments stated in the Motions, and the Memorandum and attached exhibit of the Trustee, finds that the Trustee's Motion for Summary Judgment should be Granted.

### *FACTS*

The Debtors, Eduardo and Annette Quintero (hereinafter referred to as Debtors), have listed as an asset, an interest

owned by Eduardo Quintero in an annuity contract and have claimed an exemption for this interest under §§ 2329.66(A)(6)(b) and 3911.10 of the Ohio Revised Code. The amount of the interest and exemption is Three Thousand Five Hundred Dollars ($3,500.00).

The contract at issue is entitled "Individual Flexible Premium Deferred Fixed and Variable Annuity Contract" and was issued by the Protective Life Insurance Company of Birmingham, Alabama with an effective date of February 19, 1999. The contract provides for the owner to make discretionary purchase payments which may be allocated to various investment options included within either a Fixed or Variable Account. Fixed Account investments are interest bearing accounts offered by the insurance company to which interest income is credited based upon a current rate established annually, and guaranteed by the company to be not less than an annual effective rate of three percent (3%). The Variable Account is described in the contract as a unit investment trust registered with the Securities and Exchange Commission under the Investment Company Act of 1940. Purchase payments allocated to the Variable Account may be invested in one or more sub-accounts, each of which invests exclusively in a corresponding fund. Funds available at the date of the contract represented a mix of investment strategies, including growth and income funds, international equity funds, money market funds, small cap growth, balance funds and strategic bond funds among others. With regard to the valuation of the Variable Account, the contract states:

> The values and benefits of this Contract provided by the Variable Account depend on the investment performance of the Funds in which your selected Sub–Accounts are invested. We do not guarantee the investment performance of the Funds. You bear the full investment risk for amounts allocated or transferred to the Sub–Accounts.

The owner's interest in the contract at any one time is equal to the Contract Value which is the sum of the Variable Account value and the Fixed Account value. Upon the annuity commencement date, this value will be applied to one of several annuity options listed in the contract or alternatively to any other kind of annuity issued by the insurance company at that time.

The contract also provides for the surrender of the contract at any time prior to the annuity commencement date, upon which the owner will be paid the contract value less a surrender charge which diminishes each year until reaching zero after the sixth (6th) year of the contract. Upon the death of the owner or annuitant, a death benefit will be paid to a beneficiary selected by the owner. The death benefit is essentially equivalent to the contract value, however it is subject to a guarantee whose limits decline in value due to unfavorable investment performance and also provides that the beneficiary will receive, at a minimum, the amount of the accumulated purchase payments made under the contract less any amounts previously surrendered.

In addition to the above noted options, the contract also provides substantial flexibility for the owner, who may change the annuitant upon whose life the payments will be based, and may also change the recipients of the annuity payments and the death benefit. The owner may also change the annuity commencement date, may assign the contract, and with the consent of the insurance company, may amend or modify the contract.

The contract application and specification pages indicate that the annuitant and owner is Eduardo Quintero and the annuity commencement date is February 19, 2047, at which time the annuitant will be eighty-five (85) years of age. The plan type selected is non-qualified and the beneficiary for purposes of the death benefit is Annette Quintero, wife of the owner and also a debtor in this case.

## LAW

Section 2329.66 (A)(6)(b) of the Ohio Revised Codes provides:

(A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgement or order, as follows:

\* \* \*

(6)(b) The person's interest in contracts of life or endowment insurance or annuities, as exempted by section 3911.10 of the Revised Code;

Section 3911.10 of the Ohio Revised Code provides:

All contracts of life or endowment insurance or annuities upon the life of any person, or any interest therein, which may hereafter mature and which have been taken out for the benefit of, or made payable by change of beneficiary, transfer, or assignment to, the spouse or children, or any persons dependent upon such person, or an institution or entity described in division (B)(1) of section 3911.09 of the Revised Code, or any creditor, or to a trustee for the benefit of such spouse, children, dependent persons, institution or entity, or creditor, shall be held, together with the proceeds or avails of such contracts, subject to a change of beneficiary if desired, free from all claims of the creditors of such insured person or annuitant. Subject to the statute of limitations, the amount of any premium upon such contracts, endowments, or annuities, paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the contracts, but the company issuing any such contract is discharged of all liability thereon by the payment of its proceeds in accordance with its terms, unless, before such payment, written notice is given to it by a creditor, specifying the amount of the claim and the premiums which the creditor alleges have been fraudulently paid.

## DISCUSSION

Determinations as to exemptions from property of the bankruptcy estate are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(B). Thus, this case is a core proceeding.

This contested matter comes before the Court upon the Trustee's Motion for Summary Judgment. The primary purpose of a summary judgment motion is to enable a trial court to readily dispose of cases on matters of law where it is evident that no material controversy of fact exists. In other words, a summary judgment motion determines the necessity of a trial. *Kirkland v. United States*, 930 F.Supp. 1443, 1445 (D.Colo.1996). In a bankruptcy proceeding, the standard for a summary judgment motion is set forth in Bankruptcy Rule 7056 and provides, like the Federal Rules of Civil Procedure, that: A movant will prevail on a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making this determination, the Court is directed to view all facts in the light most favorable to the nonmoving party. *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 586–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In this case, the Debtors have not filed a response to the Trustee's Motion for Summary Judgment and upon review of the Trustee's Motion, and Memorandum in Support, the Court finds that no genuine issues of material fact exist, and therefore the Court may proceed to determine the issues of law raised by the Parties.

Two questions are presented in determining if the Debtors' interest in the contract at issue is exempt under O.R.C. § 2329.66(A)(6)(b). First, does the contract qualify as an annuity to which the

provisions of O.R.C. § 3911.10 pertain? Second, if the contract qualifies as an annuity under O.R.C. § 3911.10, does it meet the further requirement of that section, which holds that it must have been taken out for the benefit of one of the individuals, institutions, or entities enumerated in the section?

■ In regard to the first consideration, O.R.C. § 3911.011, which describes the regulation of any "policy, annuity, or other contract providing variable or fixed and variable benefits or contractual payments" provides, in division (D) of that section, that subject to certain exceptions (not relevant to this case), that "all pertinent provisions of Title XXXIX of the Revised Code apply to all policies, annuities, and other contracts providing variable or fixed and variable benefits or contractual payments." A straight forward reading of this section would suggest, therefore, that fixed and variable annuities are encompassed by the term "annuity" as used in O.R.C. § 3911.10. Few courts have directly addressed the question of whether the term "annuity," as used in O.R.C. § 3911.10, includes fixed and variable annuity contracts, as for the most part, litigation involving the exemption of contracts of this nature has been concerned with whether such contracts qualify for exemption under O.R.C. §§ 2329.66(A)(10)(b) and (c) regarding pensions, annuities, Individual Retirement Accounts or similar plans. However, bankruptcy courts in two decisions involving similar contracts have addressed this issue, and despite the language of the statute applying all pertinent provisions of Title XXXIX to fixed and variable benefit annuities, have concluded the contracts were not exempt, centering their discussion around the attributes necessary for contracts to be properly considered "annuities upon the life of any person" for the purposes of O.R.C. § 3911.10. *In re Cullison*, 117 B.R. 314 (Bankr.S.D.Ohio 1990); *In re Fichter*, 45 B.R. 534 (Bankr. N.D.Ohio 1984). These decisions contrasted annuities which incorporated attributes

characteristic of life insurance from other contracts which were fundamentally dissimilar to life insurance. For example, in *In re Cullison*, the court described a tax sheltered annuity established by a debtor's employer. The court stated:

> By its terms that statute [O.R.C. § 3911.10] contemplates either a contract of life insurance where the beneficiary has one of the stated relationships to the Debtor or an insurance contract providing for payments in predetermined regular payments as an annuity. *The Debtor's interest in the Plan prior to his retirement date, however, is not in the nature of life insurance, but rather is an interest in a pension savings plan funded by his employer. The Debtor's right to [the amount of his interest in the plan] is not dependent upon his death and is not a contract upon the Debtor's life or insurance.*

*In re Cullison*, 117 B.R. at 316 (emphasis added).

In *In re Fichter*, the court discussed the debtor's claim for exemption under O.R.C. § 2329.66(A)(6)(b) for a contract described as a Variable Annuity and listed as an Individual Retirement Account. Under the plan, the debtors made their own contributions to the fund for the purpose of retirement, and had the right to change the date of retirement as well as the right to withdraw funds at any time. *In re Fichter*, 45 B.R. at 535. The court found that the language qualifying "annuities" in O.R.C. § 3411.10 by the phrase "upon the life of any person" demonstrated that the exemption was intended to exempt annuities that had the same function as life insurance. *Id.* at 536. Furthermore, the court noted the difference between such an annuity and life insurance:

> [l]ife insurance is a promise to pay a sum certain on the death of the insured and an annuity is essentially a form of investment which pays periodically during the life of the annuitant or during a term fixed by contract rather than on the occurrence of a future contingency

... (In the case of an annuity) No special benefits are paid a beneficiary or the Debtors' estates by reason of the Debtors' deaths.

*Id.,* quoting *In re Howerton,* 21 B.R. 621, 623 (Bankr.N.D.Tex.1982). Thus in noting the difference between life insurance and an annuity of the sort described in *In re Howerton,* the court in *In re Fichter* concluded that it was difficult to construe the Variable Annuity contract under consideration as being upon the life of any person. *Id.*

Determination of whether any one particular contract fits the definition of annuity for the purposes of an exemption under the Ohio statute is further complicated by the significant variation of contracts of this sort. The continued evolution of products marketed by life insurance companies has resulted in hybrid instruments such as the Individual Flexible Premium Deferred Fixed and Variable Annuity Contract under consideration in this case. These instruments are designed to provide features of traditional insurance products: avoidance of probate, flexible payment options, tax sheltered investment appreciation, and the protection of state insurance regulation, while at the same time allowing investment opportunities and flexibility traditionally found only in direct market or mutual fund investments. Because of this complexity, categorizing these products in terms of the more static descriptions of the statutes can be difficult. In this case, however, it appears that the contract listed for exemption by the Debtors is in the nature of those described in *In re Cullison* and *In re Fichter.* Similarities include the flexibility, which allows withdrawals and changes of the annuity commencement date and recipient of the payments, as well as an essential nature more in the mode of an investment vehicle rather than a contract with a life insurance emphasis. For instance, upon the death of an insured, the death benefit is essentially equal to the amount it would be if the arrangement were an investment account rather than a life insurance policy. Thus, as the contracts in *In re Cullison* and in *In re Fichter* were considered to be beyond the scope of annuities as contemplated by O.R.C. § 3911.10, so too, is the Debtor's contract in this case.

■ However, even assuming arguendo that the contract at issue in this case qualifies as an annuity under § 3911.10, this section requires that such a contract be taken out for the benefit of an individual or entity enumerated in O.R.C. § 3911.10, and the failure of the contract in question to meet this requirement is fatal to the Debtor's claim of exemption. Specifically, § 3911.10 requires that the annuity contract, in order to be exempt, be taken out for the benefit of the spouse or children, or any persons dependent upon such person, or an institution or entity described in division (B)(1) of § 3911.09 of the Revised Code, (essentially religious, charitable or educational institutions), or any creditor, or to a trustee for the benefit of such spouse, children, dependent persons, institution or entity, or creditor. However, noticeably absent from the above list is the actual owner of the policy. In addition, §§ 2329.66(A)(10)(b) and (c) specifically address and limit exemptions for annuities in the nature of retirement savings plans. Hence, it would be entirely inconsistent with the limitation provisions of those sections, if annuities paying post-retirement benefits to owners were exempt in their entirety under § 2329.66(A)(6)(b). Furthermore, the courts in the cases previously discussed in this Opinion have found little difficulty in determining that annuities, which were established to provide future payments to the owner, failed to meet the requirement that they be taken out for the benefit of one of the parties described in the statute. In both *In re Cullison* and *In re Fichter,* the owner-debtor named his wife as beneficiary of the death benefit, as is the case in this proceeding. The court in *In re Cullison,* after concluding that the tax shelter annuity contract under consideration failed the first question,(i.e. it was

not a contract upon the debtors's life, or insurance), added "[n]or is it a contract taken out for the benefit of his spouse, although she may have rights to his Interest should the Debtor die before the Interest is paid out to him." The court, in so noting the failure of both tests, concluded, "[t]herefore, the Debtor's Interest in the Plan is not an annuity within the meaning of Ohio Revised Code § 3911.10." *In re Cullison,* 117 B.R. at 316. The court in *In re Fichter,* after reviewing a contract described as a variable annuity, was even more adamant in its conclusion:

> By naming his wife as the beneficiary the debtor claims he has met the conditions of O.R.C. § 3911.10. The court whole-heartedly disagrees. The debtor's position ignores the fact that the main purpose of this contract is that he is the beneficiary unlike life insurance policies which are intended to pay dependents. Specifically stated in the contract is that this plan is a tax favored plan and it is to provide for the retirement of the owner, both purposes of which are not part of the ordinary life insurance plans intended to be exempt under this section of the Code.

The specifications of the contract in question, naming of the owner as the annuitant and as the recipient of payments which are to commence long after a normal retirement date, call for a similar determination.

Accordingly, for the above stated reasons, the contract in question in this case does not conform to the requirements of O.R.C. § 3911.10, in that it is not a contract of life or endowment insurance, or an annuity upon the life of any person which has been taken out for the benefit of a person, institution, or entity as enumerated in the statute, and therefore the Debtors are not entitled to an exemption under O.R.C. § 2329.66(A)(6)(b) for their interest in the Individual Flexible Premium Deferred Fixed and Variable Annuity Contract issued by the Protective Life Insurance Company. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the Trustee's Motion for Summary Judgment be, and is hereby, GRANTED.